Larry SCHACHLE and Genevieve
Schachle, Appellants,

v.

Leonard E. RAYBURN and Debbie
Rayburn, Appellees.

No. 6236.

Supreme Court of Alaska.

June 24, 1983.

Calvin R. Jones, Hoge & Lekisch, Anchorage, for appellants.

James C. Merbs, Anchorage, for appellees.

Before BURKE, C.J., and RABINOWITZ, CONNOR, MATTHEWS and COMPTON, JJ.

## OPINION

CONNOR, Justice.

This appeal questions the superior court's disposition of summary judgment motions made by both defendants and plaintiffs in the course of litigating a dispute arising out of a land sale transaction.

### Facts

Lot 27, owned by the Schachles, is an unsubdivided rectangular lot just under five acres in area.[1] The Schachles occupy a residence approximately midway back on the western half of the lot. At the rear of the lot lie a quonset storage hut and house trailer which are used in the Schachles' business. During the period from 1973 to 1975, the Schachles constructed two residences on Lot 27, each set back approximately 70 feet from the street. One is on the east half of the lot and the other is situated on the west half.

Early in 1975 Debbie Rayburn called Larry Schachle and inquired about buying one of the new homes. She, her husband, Leon-

---

1. A diagram of this lot is attached as an appendix to this opinion.

ard, and her father, Leslie Sherburne, then visited the premises and discussed the property with Larry Schachle.

Sherburne claims that Larry Schachle told him that the parcel to be sold went from "the power line to his driveway" and that it extended "back beyond the well." Debbie Rayburn testified that Schachle told her that the land to be conveyed went "from that driveway over there to that driveway over there and back behind the house," and that although he did not indicate how far beyond the house it went, he told her that the parcel to be conveyed was, or would be, "legal."

There is no city sewer service to Lot 27, and the Schachles admit that they "knew that they could not deliver title to the land until a city sewer system was operational in that area." They deny having had any knowledge, at that time, of the minimum lot size for a legal transfer without sewer service.[2] On March 31, 1977, the parties signed an earnest money receipt which stated in part:

"Received from Mr. & Mrs. Leonard Rayburn the sum of $500.00 to apply on sales contract for the purchase of the following described real estate . . . 2833 E. 72 Ave. Anch., Ak. The full purchase price . . . is to be $46,500.00, payable as follows: $4,000 down . . . and balance $350 per mo. . . . with interest . . . at 8% . . . per annum . . ., Contract to follow. Down payment to be in approx. 30 days.

. . . . .

(signed) Genevieve Schachle
Leonard E. Rayburn
T 12 N R 3 W East Corner of Lot 27 Sec. 4"

(Underlined portions are handwritten).

Left blank on the document were provisions regarding security and time for performance. This is the only written memorandum of the contract.

The Rayburns entered into possession shortly thereafter. Several months later,

the Schachles presented them with a lease containing an option to purchase the land when the sewer line was installed.

On July 12, 1977, Leonard and Debbie Rayburn filed a complaint claiming that Larry and Genevieve Schachle had agreed to sell them a residence along with approximately 1¼ acres of land and seeking specific performance of that alleged agreement.

The Schachles moved for summary judgment claiming that the description of the land to be conveyed was too vague to permit specific performance to be granted. The court denied this motion. The case was set for trial, but at a pretrial settlement conference the parties agreed to a proposed resolution of the matter. The proposal called for the Schachles to subdivide Lot 27 and to sell the Rayburns a 1¼ acre parcel, with the Rayburns agreeing to reconvey to the Schachles all but a portion of approximately 125' × 120' if the sewer line is extended to the property within five years and the Municipality approves the lot. The Rayburns also agreed to give the Schachles a license to use the area to be reconveyed in the interim. Based on this settlement agreement, the case was taken off the trial calendar and steps were taken to carry out the settlement agreement.

Under AS 29.33.170 the municipal authorities made approval of the proposed plat, submitted by the Schachles in an attempt to subdivide Lot 27, contingent on satisfying four conditions. One condition was the removal of the quonset hut and trailer used by Schachle in his business. Because of the importance of these buildings to his business operations, Schachle refused to remove them and the plat application was rejected.

The Rayburns thereafter moved for summary judgment, seeking to receive a conveyance of title to the 1¼ acres. On May 15, 1981, the court entered judgment in the Rayburns' favor, finding "that the settlement agreement entered into on July 14, 1980, determined and settled all existing

---

**2.** It was later established that the minimum residential lot size at this location was 1¼ acres.

issues of fact and law between the parties," and ordering specific performance pursuant to the settlement agreement.

### A. Denial of Schachles' Summary Judgment Motion.

The Schachles contend that the trial court erroneously denied their motion for summary judgment. They argue that the statute of frauds bars enforcement of the oral contract,[3] at least beyond the lot size conceded by the Schachles.[4]

We believe that the trial court erred in denying the Schachles' motion for summary judgment. Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that [the] party is entitled to a judgment as a matter of law." Alaska R.Civ.P. 56(c).

In deciding whether the Schachles were entitled to summary judgment, we will take all reasonable inferences raised by the facts properly before us in favor of the Rayburns, and we will resolve any disputed factual issues in the Rayburns' favor. In the context of the theory that enforcement of the alleged agreement is precluded by the statute of frauds, this means that we must consider whether the evidence, viewed favorably to the Rayburns, raises a reasonable inference of the existence of facts sufficient to support a judgment enforcing the alleged contract in the Rayburns' favor.

The Rayburns' position is that the lot to be conveyed, according to the extrinsic evidence, was a "legal-sized" lot, and that since a "legal-sized" lot was 1¼ acres, that is a sufficient description. According to Larry Schachle, however, before execution of the earnest money agreement he "explained to the plaintiffs two (2) conditions under which a conveyance would be made, namely, (a) I would convey title when I could subdivide the above-described parcel, and such could not be done until a sewer line was in and (b) The size parcel they were to receive was 70' × 120', with 70' frontage, extending from the Southeast corner of the above-described parcel. I said that if they would take the property under those conditions, we could enter into an agreement."

■ The only written memorandum that is subscribed by the Schachles, as required to take the contract out of the statute of frauds, is the "Earnest Money Receipt" quoted above. This writing is, however, insufficient as a matter of law because it does not include an adequate description of the subject matter of the contract. In *Weiss v. Girtz,* 6 Alaska 547 (1922), it was established that a memorandum must contain a description such that the subject matter of the contract is identifiable.

We have previously recognized:

"The established rule which is employed in construing defective descriptions in memoranda for the sale of realty, namely that extrinsic evidence may be received to show the application of the terms of the description given in the memorandum, but not to supply missing elements without which the description is hopelessly inadequate."

*Mitchell v. Land,* 355 P.2d 682, 685 (Alaska 1960).

In *Fleckenstein v. Faccio,* 619 P.2d 1016, 1020–1021 (Alaska 1980), we explained that in determining the adequacy of a memorandum we would consider "... the admitted facts, the surrounding circumstances, and all explanatory, and corroborative and re-

---

**3.** AS 09.25.010(a)(6) states:
   "(a) In the following cases and under the following conditions an agreement, promise, or undertaking is unenforceable unless it or some note or memorandum of it is in writing and subscribed by the party charged or by his agent:

   . . . . .

   (6) an agreement for leasing for a longer period than one year, or for the sale of real property, or of any interest in real property, or to charge or encumber real property."

**4.** AS 09.25.020(4) provides an exception to the application of the statute of frauds in situations where a party admits to the making of an agreement. Here, the Schachles admit to contracting to sell a lot 70' × 120'.

butting evidence...." 619 P.2d at 1020, *quoting* 2A Corbin, *Corbin on Contracts* § 498 at 681 (1950). Yet, in this case, even resort to extrinsic evidence cannot cure the fatal deficiency in the Earnest Money Receipt.

In *Fleckenstein,* the written description of " 'property between Nick Cekin and Larry & Helen Fleckenstein house,' in the context of the positions taken by the parties to th[at] case, clearly identifie[d] the property which was sold." 619 P.2d at 1021. Such is not the case here. In the case at bar, in contrast with *Fleckenstein,* there is simply no way to resolve the dispute over the quantity of land involved short of choosing to disbelieve one or the other party's unsupported oral testimony, without any reference whatsoever to the written document. The written document adds absolutely nothing to the oral evidence in resolving the critical dispute over the location of the back lot line of the proposed conveyance, and the quantity of land involved. For this reason, we think the Schachles were entitled to partial summary judgment denying contractual relief to the Rayburns to the extent that the parcel is alleged to exceed the dimensions now conceded by them.

This case must be remanded to the superior court for entry of such a judgment, and for further proceedings with respect to the Rayburns' request for specific performance.

B.  The Granting of the Rayburns' Summary Judgment Motion.

The Schachles argue that the proposed settlement agreement was based on a mutual mistake of law, and hence is not binding and should not have been enforced through summary judgment in favor of the Rayburns.

Despite the summary judgment terminology, the judgment below enforced the settlement agreement; we will, therefore, treat the Rayburns' motion as one seeking enforcement of agreement only.[5] Since there was no decree entered that incorporated the terms of the proposed settlement prior to the Schachles' attempt to withdraw from it, their right to rescind is equivalent to their right to rescind a contract.

Mutual mistake is recognized as a ground for rescission. The Restatement of Contracts states:

"[W]here parties on entering into a transaction that affects their contractual relations are both under a mistake regarding a fact assumed by them as the basis on which they entered into the transaction, it is voidable by either party if enforcement of it would be materially more onerous to him than it would have been had the fact been as the parties believed it to be."

American Law Institute, Restatement of Contracts § 502 (1932). The Restatement includes, by way of illustration, a California case which involved a situation similar to that presented here:

"A leases Blackacre to B for 10 years at $5000 a year rental. The lease is made on the assumption that a wooden building can lawfully be erected on the land, and it is the expectation of both parties that such a building will be erected. Unknown to them, two days previous, a municipal ordinance forbade such erection. The lease is voidable by either party that is harmed."

Restatement of Contracts § 502, illustration 4 (1932).

---

5. The Rayburns' motion was for summary judgment and not for confirmation or enforcement of the alleged agreement. And, the judgment entered below does purport to adjudicate the merits of the Rayburns' claims under the initial complaint, but it is, in effect, an order that enforces the *settlement* without resolving the legal or factual issues raised in the underlying action. The relief granted was in the form of a mandate to convey the 1¼ acres subject to the reconveyance provision of the settlement agreement. It is apparent, notwithstanding the use of summary judgment language, that what the superior court did was to compel compliance with the agreement. In any event, there is no evidence in the record to support the court's finding that the factual disputes which formed the basis of the original suit were "determined and settled" by the settlement agreement. That finding is clearly erroneous and granting summary judgment for plaintiffs is, therefore, unjustified.

In *Ryan v. Vickers,* 158 Colo. 274, 406 P.2d 794 (Colo.1965), for example, the Supreme Court of Colorado held that a shared mistaken belief as to the priority of liens on equipment excused the promisor from performing under the terms of a contract with the plaintiff which had erroneously presupposed superiority over other liens.

In *Crown Northwest Equipment, Inc. v. Donald M. Drake Co.,* 49 Or.App. 679, 620 P.2d 946 (Or.App.1980), where both contractor and subcontractor mistakenly believed that the subcontractor's work met the owner's specifications, the Oregon court held that the contractor could cancel its contract with the subcontractor without liability upon learning of the owner's disapproval.

■ It is clear, on the current record, that the Schachles have satisfied their burden of proving, by clear and convincing evidence,[6] that the settlement agreement was grounded on a mutually mistaken view of the law regarding platting requirements. Apparently, both parties interpreted AS 29.33.170 to allow a waiver of the platting requirements in the circumstances of this case.

It is true that the settlement agreement does not recite this interpretation of AS 29.33.170 as a basis of the bargain and that the Rayburns now deny that a mutual mistake was made, but their memorandum in support of their motion for summary judgment contains a contrary assertion:

> "[T]he existing law upon which this settlement is predicated in [sic, should be "is"] AS 29.33.170, wherein a waiver [of formal platting procedures] can be acquired for conveyance of 1¼ acres of land."

And, reliance was again alluded to by counsel for the Rayburns at the hearing on their summary judgment motion.

It is undisputed that enforcement of the settlement according to its terms would impose a substantial hardship upon the Schachles that had not been anticipated. It is also undisputed that the Schachles, in good faith, did what they could to comply with the settlement, short of tearing down the buildings that they had been using in their business for years. Under these circumstances we believe it was inequitable to enforce the settlement agreement.

In conclusion, we find that the trial court erred in refusing to grant summary judgment in favor of the Schachles, and erred again in enforcing the settlement agreement against them. The judgment must be reversed, and the case must be remanded for further proceedings consistent with this opinion.

REVERSED and REMANDED.

6. Restatement of Contracts § 511 (1932); *Gill v. Kreutzberg,* 24 Ariz.App. 207, 537 P.2d 44, 46 (Ariz.App.1975); *Pepper v. Evanson,* 70 Wash.2d 309, 422 P.2d 817, 820 (Wash.1967); *see also Kupka v. Morey,* 541 P.2d 740, 749–50 (Alaska 1975) (as to reformation).

APPENDIX

Lot 27

‑‑‑ Property claimed by Rayburns

RABINOWITZ, Justice, dissenting.

I disagree with the court's holding that the Schachles were entitled to partial summary judgment denying contractual relief to the Rayburns to the extent that the parcel is alleged to exceed the dimensions now conceded by them. More particularly, I am in disagreement with the court's conclusion that the absence of a description of the lot size in the earnest money agreement is a fatal defect rendering the contract unenforceable as a matter of law. The majority holds that a memorandum sufficient to take a land contract out of the statute of frauds must specifically describe the quantity of the land involved. In my view, this is inconsistent with *Fleckenstein v. Faccio,* 619 P.2d 1016, 1020–21 (Alaska 1980). There we stated that the note or memorandum "need not be formal or complete."[1]

If the oral and written evidence together establish the existence of all the essential terms of the contract, the contract is enforceable under *Faccio.*[2] Thus, under *Faccio* the parties' oral testimony is extremely relevant to a determination of whether the Rayburns were entitled to a conveyance of one and one-quarter acres. Drawing factual inferences in their favor, I conclude that the Schachles were not entitled to partial summary judgment.

---

1. In *Faccio,* the evidence showed that the oral agreement did not encompass a description of the "precise subject matter." We concluded that the reference to " 'property between Nick Cekin and Larry & Helen Fleckenstein house,' " in the context of the positions taken by the parties in the case, clearly identified the property. 619 P.2d at 1021.

2. [A] writing may be sufficient even though it is cryptic, abbreviated, and incomplete. *Faccio,* 619 P.2d at 1021 n. 18, quoting 2 A. Corbin, Corbin on Contracts § 498 at 683 (1950). We noted that Corbin further emphasizes this point in reference to the adequacy of subject matter identification:

> [I]f the court is convinced that no fraudulent substitution of property is being attempted and that the land actually agreed upon has been clearly established by all the evidence, including the written memorandum, the surrounding circumstances, and the oral testimony, little time should be wasted in listening to argument that the written description is inadequate.

*Faccio,* 619 P.2d at 1021 n. 18, quoting 2 Corbin, *supra,* § 505 at 718.