Frank W. MOONEY, Appellant,

v.

STATE of Alaska, Appellee.

No. A–9304.

Court of Appeals of Alaska.

Sept. 7, 2007.

Dan Lowery, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant.

Timothy W. Terrell, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and David W. Márquez, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## OPINION

MANNHEIMER, Judge.

Frank W. Mooney seeks post-conviction relief from his conviction and sentence for first-degree sexual assault. In this appeal, Mooney asserts that he is entitled to relief on two bases.

First, Mooney contends that he rejected a favorable plea agreement because his attorney mistakenly (and incompetently) told him that he would be treated as a second felony offender for presumptive sentencing purposes, and that he therefore faced a presumptive term of 15 years' imprisonment if he went to trial and was convicted. After Mooney rejected the proposed plea bargain, he was convicted at trial. At sentencing, the superior court ruled that Mooney was a third felony offender, and that he therefore faced a presumptive term of 25 years' imprisonment. Mooney now asserts that he would have accepted the State's proposed plea bargain if

he had known the true extent of his potential liability.

Second, Mooney contends that he is entitled to a new trial based on the testimony of two witnesses who claim that, following Mooney's trial and conviction, the victim of the sexual assault admitted to them that she had lied about being sexually assaulted.

As we explain below, we are not sure whether Mooney was correctly sentenced as a third felony offender. It appears possible (although we can not tell for sure, based on the limited record before us) that Mooney should have been sentenced as a second felony offender.

However, assuming that Mooney was properly sentenced as a third felony offender, we nevertheless reject Mooney's first claim for relief—because the record shows that, during the plea negotiations, both the prosecutor and the defense attorney shared the same mistaken belief concerning Mooney's presumptive sentencing status (*i.e.*, the belief that Mooney was a second felony offender rather than a third felony offender). Mooney's claim is therefore governed by the law that applies to contracts where the parties are laboring under a mutual mistake concerning a material fact. Because the prosecutor's offer of a favorable plea agreement was premised on the mistaken assumption that Mooney faced only a 15–year presumptive term if he was convicted at trial, and because there is no way of knowing what offer (if any) the prosecutor might have made if he had known that Mooney faced a 25–year presumptive term, we conclude that even if Mooney's defense attorney gave him incompetent advice regarding the applicable presumptive term, Mooney is not entitled to demand specific performance of the prosecutor's offer.

However, with respect to Mooney's second claim for relief (his request for a new trial), we conclude that the superior court must reconsider its decision—because the court applied the wrong legal test when the court rejected this claim.

The superior court declared that even if the victim had repudiated her prior accusation of sexual assault when she spoke with

Mooney's two witnesses, this evidence was merely "impeaching"—and, as such, it could not legally support the granting of a new trial.

The superior court's ruling was based on the test announced by our supreme court in *Salinas v. State*, 373 P.2d 512 (Alaska 1962). Under *Salinas*, when a defendant seeks a new trial based on newly discovered evidence, one of the things the defendant must prove is that the new evidence is not "merely cumulative or impeaching". *Id.* at 514.

It is true that Mooney's new evidence impeaches the testimony that the victim gave at Mooney's trial. But, as we explain in more detail in this opinion, the *Salinas* test must not be interpreted to bar a new trial in all instances where the defendant's newly discovered evidence undermines the credibility of the testimony given by one or more trial witnesses. If "impeach" were interpreted this broadly, it would be all but impossible to procure a new trial based on newly discovered evidence.

Rather, we conclude that this element of the *Salinas* test refers to evidence that is cumulative of the evidence previously available, or that simply reinforces the evidence that was previously available to impeach the government's case. If, on the other hand, the newly discovered evidence impeaches the government's case in new and significant ways, the *Salinas* test allows a court to order a new trial.

We therefore direct the superior court to re-evaluate Mooney's request for a new trial.

*A preliminary issue: Should Mooney have been sentenced as a second felony offender or a third felony offender under Alaska's presumptive sentencing law?*

At the time of Mooney's prosecution, a second felony offender convicted of first-degree sexual assault faced a 15–year presumptive term of imprisonment, while a third felony offender convicted of this offense faced a presumptive term of 25 years. The maximum punishment for first-degree sexual assault at this time was 30 years' imprisonment.[1]

Both the prosecutor, Assistant District Attorney Daniel J.M. Schally, and Mooney's defense attorney, Loren K. Stanton, were aware that Mooney had several prior felony convictions from the State of Washington: a 1981 conviction for rape, plus additional convictions for burglary and felony assault from 1976. However, both Schally and Stanton initially believed that only one of these prior felonies—Mooney's 1981 conviction for rape—could be counted when assessing Mooney's prior offender status under Alaska's presumptive sentencing law.

At the time of Mooney's offense (September 2001), the pertinent sentencing statute, AS 12.55.145(a)(1)(A), stated:

[A] prior [felony] conviction may not be considered if a period of 10 or more years has elapsed between the date of the defendant's unconditional discharge on the immediately preceding offense and [the defendant's] commission of the present offense unless the prior conviction was for an unclassified or class A felony[.]

Schally and Stanton agreed that Mooney's rape conviction in Washington was the equivalent of a conviction for the unclassified Alaska felony of first-degree sexual assault.[2] Accordingly, they further agreed that this rape conviction counted against Mooney, regardless of how old it was. However, Schally and Stanton concluded that Mooney's other felony convictions (*i.e.*, his 1976 convictions for burglary and assault) did not count.

In other words, both the prosecutor handling Mooney's case and Mooney's defense attorney believed that Mooney was a "second felony offender" for purposes of Alaska's presumptive sentencing law, and that Mooney therefore faced a presumptive term of 15 years' imprisonment if he went to trial and was convicted of first-degree sexual assault.

1. *See* former AS 12.55.125(i) (pre-September 2003 version).

2. *See* AS 12.55.145(a)(1)(B): "a conviction in . . . another jurisdiction of an offense having elements similar to those of a felony defined as such under Alaska law at the time the offense was committed is considered a prior felony conviction [for purposes of Alaska's presumptive sentencing law.]"

The plea negotiations in Mooney's case were premised on this assumption.

Schally first offered to let Mooney plead guilty to attempted first-degree sexual assault (a class A felony with a 10–year presumptive term for second felony offenders). Later (when Mooney failed to respond to this first offer), Schally offered to let Mooney plead guilty to second-degree sexual assault (a class B felony with a 4–year presumptive term for second felony offenders). Mooney rejected both of these offers and went to trial—and he was convicted.

While preparing for Mooney's sentencing, Schally reached a new conclusion about Mooney's presumptive sentencing status. In a "Notice [Regarding] Prior Convictions and Presumptive Sentencing", Schally told the superior court:

> [Mooney's] prior conviction for First[-]Degree Rape in 1981, although over ten years old, qualifies as a prior conviction for purposes of [presumptive] sentencing ... because it is for an offense equivalent to an unclassified ... felony in Alaska[.]

> [His] other prior felony convictions qualify per *Griffin v. State* [*sic: Griffith v. State*], 653 P.2d 1057 (Alaska App.1982).

In other words, based on this Court's decision in *Griffith v. State*, Schally concluded that all of Mooney's prior felony convictions counted for presumptive sentencing purposes because Mooney's most recent prior felony was an unclassified felony. As we shall explain, this was an incorrect reading of *Griffith*. Nevertheless, based on his erroneous interpretation of *Griffith*, Schally asserted that Mooney was a third felony offender for presumptive sentencing purposes—and that Mooney therefore faced a 25–year presumptive term of imprisonment.

Mooney's defense attorney, Stanton, did not object to the prosecutor's new analysis of Mooney's presumptive sentencing status. In an affidavit filed during the post-conviction relief proceedings, Stanton described his response to the prosecutor's assertion that Mooney should be treated as a third felony offender. According to Stanton, after he read the prosecutor's pleading, he researched this issue, but he "did not come to any conclusion on the [applicable] presumptive term".

Later, at Mooney's sentencing hearing, when Superior Court Judge Michael A. Thompson indicated that he agreed with Schally's position (*i.e.,* that Mooney was a third felony offender, and that Mooney faced a 25–year presumptive term), Stanton still did not object—even though, as noted in the preceding paragraph, he apparently was not sure that the judge's ruling was correct. According to Stanton's affidavit, he decided not to object to Judge Thompson's ruling "because of [his] strong belief ... that [Mooney's] conviction would be overturned [due to erroneous evidentiary rulings at trial]".

Mooney was thus sentenced as a third felony offender. Based on the State's proof of aggravating factors, Judge Thompson increased the 25–year presumptive term by adding 5 years of suspended imprisonment. That is, the judge sentenced Mooney to 30 years' imprisonment with 5 years suspended. On appeal, we affirmed both Judge Thompson's ruling that Mooney should be sentenced as a third felony offender, and the judge's ultimate decision to sentence Mooney to 30 years with 5 years suspended. *See Mooney v. State,* 105 P.3d 149, 155–56 (Alaska App. 2005).

Although we affirmed Judge Thompson's ruling that Mooney was a third felony offender for presumptive sentencing purposes, we may have been mistaken.

As just explained, the prosecutor's argument that Mooney should be sentenced as a third felony offender was based on the fact that Mooney's immediately preceding felony was an unclassified felony (or the equivalent of an unclassified felony). Based on this fact, and based on this Court's decision in *Griffith v. State,* the prosecutor asserted—and Judge Thompson apparently agreed—that all of Mooney's other felonies counted for presumptive sentencing purposes, no matter how old they were. But our decision in *Griffith* does not support this position.

*Griffith* held that, under AS 12.55.145(a)(1), the question of whether a defendant's older felonies count for presump-

tive sentencing purposes hinged solely on one issue of fact: whether the defendant's release from supervision from their immediately preceding felony occurred within the "look-back" period specified in the statute.[3] If the defendant's release from felony supervision occurred within the specified look-back period, *all* of the defendant's prior felonies count—no matter how old they are.[4]

Our decision in *Griffith* does not mention, much less construe, the statutory phrase "unless the prior conviction was for an unclassified or class A felony". This is because the version of the statute that we construed in *Griffith* did not contain this language.

Our decision in *Griffith* was issued on October 29, 1982. The wording about unclassified and class A felonies was added to the statute just 28 days before; *see* SLA 1982, ch. 143, § 32 (effective October 1, 1982). The version of the statute that we construed in *Griffith* was the *original* version of the statute, as enacted in 1978. *See* SLA 1978, ch. 166, § 12 (effective January 1, 1980).

In that original version, the pertinent clause of AS 12.55.145(a)(1) ended with the words "the date of the defendant's unconditional discharge on the immediately preceding offense and [the defendant's] commission of the present offense". That is, there was no exception for unclassified or class A felonies. Thus, our decision in *Griffith* says nothing about the effect of unclassified or class A felonies on the assessment of a defendant's presumptive sentencing status.

Rather, our later decision in *Gilley v. State*, 955 P.2d 927 (Alaska App.1998), provides the answer to this question. In *Gilley*, we were asked to construe the post–1982 version of the statute—*i.e.*, the version that included the language about unclassified and class A felonies. We interpreted this statute to mean that (1) if a defendant's most recent discharge from felony supervision occurred *within* the statutory look-back period, then all of the defendant's prior felony convictions count for presumptive sentencing purposes (our holding in *Griffith* ); but (2) if a defendant's most recent discharge from felony supervision occurred *outside* the statutory look-back period (that is, if the unconditional release from supervision occurred 10 years or more before the defendant's commission of the present offense), then the only prior felony convictions that count for presumptive sentencing purposes are the defendant's convictions for unclassified felonies or class A felonies (if any). *Gilley*, 955 P.2d at 930.

In other words, the fact that Mooney's immediately preceding felony was an unclassified felony had absolutely no bearing on whether Mooney's older felonies should be counted. Rather, the question that the superior court should have been asking was: "When was Mooney released from supervision from his 1981 Washington rape conviction?"

If Mooney's release from felony supervision occurred ten years or more prior to his commission of the sexual assault in the present case, then his 1976 felonies do not count, and he should have been sentenced as a second felony offender. If, on the other hand, Mooney was still on felony supervision from his 1981 rape conviction during any portion of the 10–year "look-back" period specified in AS 12.55.145(a)(1)(A), then all of Mooney's prior felonies count, and he was correctly sentenced as a third felony offender.

It is true, as we mentioned above, that this Court affirmed Judge Thompson's ruling on this issue (*i.e.*, his ruling that Mooney was a third felony offender) when we decided Mooney's direct appeal. However, the issue of whether Mooney was a second or third felony offender for presumptive sentencing purposes was not well briefed in that appeal.

Mooney's attorney, Mr. Stanton, did not even mention this issue in his opening brief; rather, he argued only that Mooney's sentence was excessive. The State responded that Mooney's sentence (30 years with 5 years suspended) was not excessive because it was not much higher than the applicable 25–year presumptive term specified by Alas-

---

**3.** *Griffith v. State,* 653 P.2d 1057, 1058 (Alaska App.1982).

**4.** *Id.*

ka law for third felony offenders. Only then did Stanton decide to argue (in his reply brief) that Mooney should have been sentenced as a second felony offender.[5]

Moreover, Stanton's argument on this issue was based on an obvious misreading of the applicable statute, AS 12.55.145(a)(1)(A).

Stanton conceded that, under this statute, Mooney's 1981 rape conviction counted for presumptive sentencing purposes, because the Washington offense of rape was equivalent to Alaska's unclassified felony of first-degree sexual assault. But Stanton contended that Mooney's older felonies (*i.e.*, the burglary and assault convictions from 1976) did not count because Mooney's rape conviction was more than 10 years old. Here is Stanton's argument:

> [I]f Mooney had committed any felony *within the ten years preceding* his current [offense], . . . the [sentencing] court [could] properly [have] considered all of [Mooney's] prior felonies. [But Mooney] has no prior felonies within the ten-year limitation window set out by [the] statute. . . . [Under] *Gilley v. State* [and] *Griffith* [*v. State*], [a defendant's] old [class B and class C] felonies [are counted] only where one [felony] is committed within the ten years preceding the current offense. [Here, Mooney] had . . . no felonies that were committed within the preceding ten years.

"Reply Brief of Appellant", *Mooney v. State,* File No. A–8383, pp. 13–14 (emphasis in the original).

But, contrary to this argument, Mooney's presumptive sentencing status did not depend on when he *committed* his prior felonies. The wording of AS 12.55.145(a)(1)(A), as well as this Court's decisions in *Griffith* and *Gilley,* all plainly state that the question of whether a defendant's prior class B and class C felonies should be counted for presumptive sentencing purposes hinges on when the defendant was *discharged from supervision* from the defendant's immediately preceding felony.

In his briefs to this Court in Mooney's direct appeal, Stanton made no claim that Mooney had been released from felony supervision 10 years or more before he committed the sexual assault in this case. Because Stanton did not raise this claim, this Court apparently assumed that Mooney had no viable argument on this point—and that, when Judge Thompson ruled on this issue, he employed the construction of AS 12.55.145(a)(1)(A) that we adopted in *Gilley.*

It now appears that these two assumptions may have been unwarranted. As explained above, when the prosecutor (Mr. Schally) argued that all of Mooney's prior convictions should be counted, he did not rely on the date of Mooney's discharge from felony supervision. (In fact, Schally's pleading made no mention of this date.) Instead, Schally relied solely on the fact that Mooney's immediately preceding felony was an unclassified felony. If Judge Thompson relied on this same reasoning, then the judge used the wrong legal test when he ruled on Mooney's presumptive sentencing status.

When Mooney litigated his petition for post-conviction relief, his new attorney (Assistant Public Defender Amanda M. Skiles) raised the issue that Mooney may have been wrongfully treated as a third felony offender for presumptive sentencing purposes. The State (also represented by a new attorney) acknowledged that Mooney "apparently [had] been unconditionally discharged from [his prior felony] more than 10 years before he committed this sexual assault." However, the State argued that Mooney was barred from pursuing this claim—because AS 12.72.020(a)(2) prohibits a defendant from raising a claim in post-conviction relief litigation if that same claim was raised on direct appeal. The State pointed out that when this Court decided Mooney's direct appeal, we addressed the claim that Mooney should have been sentenced as a second felony offender, and we resolved this claim against Mooney.

Confronted with the State's seemingly unanswerable argument, Ms. Skiles announced that Mooney was dropping his claim concerning his presumptive sentencing status. Indeed, Mooney does not mention this claim in his appeal to this Court. Nonetheless, we

---

**5.** See pages 11–14 of the "Reply Brief of Appellant" in *Mooney v. State,* File No. A–8383.

conclude (from our examination of the record before us, as well as our examination of the pleadings filed in Mooney's direct appeal) that there is a significant possibility that Mooney was sentenced illegally—*i.e.*, that he was sentenced as a third felony offender when, under the statute, he should have been sentenced as a second felony offender.

Under these circumstances, our decision of this issue in Mooney's direct appeal should not be deemed conclusive. If, in fact, Mooney was unconditionally discharged from felony supervision 10 years or more before he committed the sexual assault in the present case, then he is entitled to be re-sentenced—this time, as a second felony offender.

Because (as we explain below) we must remand Mooney's case to the superior court for reconsideration of Mooney's motion for a new trial, we direct the superior court to resolve this sentencing issue, too, during the proceedings on remand.

*Mooney's claim that he should be allowed to belatedly accept the State's favorable plea offer*

As explained in the preceding section of this opinion, in the weeks leading up to Mooney's trial, Mooney rejected two different plea bargain proposals put forward by the prosecutor. Under the first proposal, Mooney would plead guilty to attempted first-degree sexual assault, and he would face a 10-year presumptive term (the presumptive term specified for second felony offenders). When Mooney failed to respond to this first offer, the prosecutor made a better offer: Mooney would plead guilty to second-degree sexual assault, and he would face a 4-year presumptive term (again, the presumptive term specified for second felony offenders). Mooney chose to go to trial rather than accept these offers—and he was convicted.

In his petition for post-conviction relief, Mooney contends that he rejected these plea agreements—and, in particular, the more favorable second proposal—because his attorney, Mr. Stanton, incompetently told him that he was a second felony offender for presumptive sentencing purposes, and that he therefore faced a presumptive term of 15 years' imprisonment if he went to trial and

was convicted. Mooney asserts that he would have accepted the State's second proposal if he had known that he really faced a presumptive term of 25 years (as a third felony offender). For this reason, Mooney asks us to order the superior court to sentence him in accordance with the terms of the prosecutor's second offer.

Obviously, this claim evaporates if, as we discussed in the preceding section, Mooney is entitled to be re-sentenced as a second felony offender—because then his attorney's advice would be accurate.

■ However, we conclude that Mooney's claim also fails even if Mooney was correctly sentenced as a third felony offender. Accordingly, in the discussion that follows, we will assume (for purposes of this discussion only) that Mooney was properly treated as a third felony offender—*i.e.*, that Mooney was still on felony supervision from his 1981 rape conviction when he committed the sexual assault in the present case, or that his supervision from that 1981 conviction ended less than 10 years before he committed the sexual assault in this case.

The crucial fact underlying our analysis of this issue is that Mooney has never asserted that the prosecutor, Mr. Schally, knowingly misrepresented Mooney's presumptive sentencing status during the pre-trial negotiations. Even though Schally eventually concluded that Mooney should be sentenced as a third felony offender, the evidence presented at the post-conviction relief hearing establishes that both Schally and Mooney's defense attorney, Mr. Stanton, conducted their plea negotiations under the shared mistaken belief that Mooney was a second felony offender for presumptive sentencing purposes, and that Mooney therefore faced a presumptive term of 15 years' imprisonment if he went to trial and was convicted.

Because the prosecutor and the defense attorney were laboring under a mutual mistake concerning this significant aspect of the situation, Mooney's case is not analogous to instances where a defense attorney fails to communicate a proposed plea agreement to a client, nor is it analogous to instances where a defense attorney gives a client incompetent

advice (either by affirmative counsel or by omission) regarding a proposed plea agreement.

Rather, Mooney's case presents a situation where *both* the prosecutor's formulation of the offer *and* Mooney's decision to reject the offer were the product of the same mistaken belief concerning the extent of Mooney's liability if he was convicted as charged. For this reason, we conclude that Mooney's claim for post-conviction relief is governed by the law of contracts that applies when the parties are laboring under a mutual mistake concerning a material fact.

The basic rules governing this situation are found in chapter 6 of the American Law Institute's *Second Restatement of the Law of Contracts*. In particular, § 152 of the *Restatement* declares:

When Mistake of Both Parties Makes a Contract Voidable

(1) Where a mistake of both parties at the time a contract was made as to a basic assumption on which the contract was made has a material effect on the agreed exchange of performances, the contract is voidable by [an] adversely affected party unless [that party] bears the risk of the mistake under the rule stated in § 154.

(2) In determining whether the [mutual] mistake has a material effect on the agreed exchange of performances, account [should be] taken of any relief [available] by way of reformation, restitution, or otherwise.

The Comment to this section clarifies that, even in circumstances where the parties were laboring under a mutual mistake, voiding the contract is a remedy that should be used sparingly. "[This r]elief is only appropriate in situations where a [mutual] mistake ... has such a material affect on the agreed exchange of performances as to upset the very basis for the contract." *Second Restatement of Contracts*, § 152, Comment (a), Vol. 1, p. 386. "A [mutual] mistake does not make a contract voidable unless [the mistake materially affects] ... a basic assumption on which both parties made the contract." *Id.*, § 152, Comment (b), Vol. 1, p. 386.

For Alaska cases acknowledging and applying this rule regarding mutual mistake, see *Stormont v. Astoria Ltd.*, 889 P.2d 1059, 1061 (Alaska 1995), *Schachle v. Rayburn*, 667 P.2d 165, 168–69 (Alaska 1983), and *Matanuska Valley Bank v. Abernathy*, 445 P.2d 235, 237 (Alaska 1968). In particular, *Schachle v. Rayburn* holds that this rule applies to situations when the parties are mistaken concerning the law that governs their anticipated performance or benefit under the contract.

In Mooney's case, the prosecutor's and the defense attorney's mutual mistake concerning Mooney's presumptive sentencing status—*i.e.*, their mistaken belief that Mooney was a second felony offender—was obviously a basic premise of the pre-trial negotiations. Because the prosecutor believed that Mooney was a second felony offender, he made two sentencing offers that were illegal: the offer to have Mooney plead guilty to a class A felony with a presumptive term of only 10 years, and then the later offer to have Mooney plead guilty to a class B felony with a presumptive term of only 4 years.

(Because Mooney was actually a third felony offender, Alaska law specified a 15–year presumptive term if he pleaded guilty to a class A felony, and a 6–year presumptive term if he pleaded guilty to a class B felony.) [6]

But more importantly, it is impossible to know what kind of plea bargain the prosecutor would have been prepared to offer if the prosecutor had understood that Mooney faced a 25–year presumptive term (not just a 15–year term) if the case went to trial and Mooney was convicted. We believe there is a significant chance that the prosecutor never would have offered a plea agreement of 4 years to serve, or 6 years to serve, or even 10 years to serve, if he had understood this.

It is simply impossible to say, with any degree of certainty, what kind of offer the prosecutor might have made, and what kind of response Mooney might have given, if the parties had understood the true extent of Mooney's liability if he was found guilty at trial. Because of this, even assuming (for

6.  *See* former AS 12.55.125(c)(4) and former AS 12.55.125(d)(2) (pre-March 2005 versions).

purposes of argument) that Mooney's defense attorney was incompetent for failing to see that Mooney would be sentenced as a third felony offender, it would nevertheless be unfair to hold the State to either of the two offers that the prosecutor made to Mooney.

For these reasons, we affirm the superior court's dismissal of this claim.

*Mooney's claim that he is entitled to a new trial because of newly discovered evidence*

In order to explain the significance of Mooney's newly discovered evidence, we must first briefly recapitulate the underlying facts of Mooney's case. Those facts are described in our earlier opinion, *Mooney v. State,* 105 P.3d 149, 151 (Alaska App.2005).

In the early morning hours of September 11, 2001, the Ketchikan police received a 911 call reporting that a man was chasing a half-nude woman down the road. When officers responded to this call, they saw that the man (Mooney) had pinned the woman to the ground; Mooney was lying across the woman, with his arm to her throat. Mooney was wearing only pants, and the woman, S.M., was naked except for a fleece jacket.

After the officers separated Mooney and S.M., a female officer interviewed S.M. In this interview, S.M. told the officer that she had initially agreed to come to Mooney's apartment and perform oral sex on him, but during this sexual act Mooney had "gotten rough" with her. According to S.M., when she told Mooney that she wanted to stop the sexual act and leave his residence, Mooney hit her and told her that she could not leave until he reached orgasm—and that if she did not continue, he would sodomize her, and then she would not leave his residence alive. S.M. resumed fellating Mooney, but then she told him that she had to use the bathroom. When Mooney let her go, S.M. ran for the front door and fled down the street, wearing only the fleece jacket.

When Mooney was interviewed, he told the officers that S.M. had come to his apartment for the purpose of performing oral sex on him. However, Mooney denied that he had threatened S.M. or that he had forced her to do anything. Mooney agreed that, at some point during the sex act, S.M. asked to use the bathroom. However, while S.M. was in the bathroom, Mooney noticed that his wallet was missing. When Mooney asked S.M. about the wallet, she "bolted out the door". Mooney told the officers that he chased S.M. and threw her to the ground because she had just stolen $600 from him.

The authorities decided that S.M.'s version of events was more credible, and Mooney was indicted for first-degree sexual assault. The jury at Mooney's trial likewise concluded that S.M. was telling the truth about this incident, and Mooney was convicted of the sexual assault.

In the post-conviction relief litigation, Mooney supported his request for a new trial with the testimony of two witnesses who said that, after Mooney was convicted, S.M. told them that she had falsely accused Mooney.

One of these witnesses was Susan McKitrick. In an affidavit, and later at the evidentiary hearing, McKitrick testified that, several years after Mooney's trial, she spoke with S.M. at a bar in Ketchikan. According to McKitrick, S.M. (who was fairly intoxicated at the time) admitted that her accusation against Mooney was false.

The other witness was Lillian Jaehnig. Jaehnig also testified that she spoke with S.M. in a bar (apparently, this was a different conversation from the one described by McKitrick), and that S.M. admitted that she had falsely accused Mooney. According to Jaehnig, S.M. said that she had not wanted to press charges against Mooney, but the State pursued the criminal prosecution anyway.

At the post-conviction relief hearing, S.M. rebutted the testimony of both of these witnesses. S.M. agreed that she had spoken to both McKitrick and Jaehnig about Mooney's case, but she denied that she had ever recanted her accusation of sexual assault. Indeed, S.M. testified that she told Jaehnig that all of her testimony at Mooney's trial had been truthful.

When Judge Thompson ruled on Mooney's request for a new trial, he indicated that he

doubted McKitrick's and Jaehnig's assertions that S.M. had recanted her accusation of sexual assault. However, Judge Thompson then stated that even if McKitrick's and Jaehnig's testimony was true, this evidence was merely "more evidence with which to potentially impeach [S.M.] in front of the jury"—and therefore, as a legal matter, this evidence could not support the granting of a new trial.

Judge Thompson's ruling—that impeachment evidence is not legally sufficient to support a request for a new trial—was based on the test announced by our supreme court in *Salinas v. State*, 373 P.2d 512 (Alaska 1962). Under *Salinas*, when a defendant seeks a new trial based on newly discovered evidence, one of the things the defendant must prove is that the new evidence is not "merely cumulative or impeaching". *Id.* at 514. Although Judge Thompson did not refer specifically to *Salinas*, it is clear that the judge rejected Mooney's request for a new trial based on the statement in *Salinas* that the defendant's new evidence must not be "merely . . . impeaching".

It is true that Mooney's new evidence impeaches the testimony that S.M. gave at Mooney's trial. But the Alaska Supreme Court's decisions in this area demonstrate that the *Salinas* test was not intended to categorically bar relief in all instances where newly discovered evidence impeaches the credibility of the testimony given by one or more trial witnesses.

For instance, in *James v. State*, 84 P.3d 404 (Alaska 2004), the supreme court confronted a case where the defendant sought a new trial on the basis that an important government witness (the sole eyewitness to the crime) recanted her testimony after the trial. The trial judge denied the motion for a new trial because the judge concluded that the recantation was not credible. *Id.* at 404. The supreme court held that the trial judge employed the wrong test:

Although the credibility of a [witness's] recantation is certainly relevant to determining the probable result of a new trial [that included evidence of this recantation], it is entirely possible for a judge to find that, even though he or she does not be-lieve a witness's recantation, it is probable that [the] defendant . . . would be acquitted at a new trial if the witness testified in accordance with his or her recantation. Therefore, it is not enough under *Salinas* for the superior court to [assess] only the credibility of [the recantation] testimony.

*James*, 84 P.3d at 407. The supreme court vacated the trial judge's ruling and directed the judge to re-assess the defendant's motion by considering "the likely effect of the recantation evidence on a jury at a new trial". *Id.*

Although the *James* decision does not directly address the issue of "impeaching" evidence, it is obvious from the supreme court's discussion—and from the court's decision to send the case back to the trial court for renewed assessment of the defendant's motion for a new trial—that the supreme court did not interpret *Salinas* as categorically barring relief in this situation. Even though the witness's post-trial recantation was obviously "impeaching" evidence in the broad sense of the word, the supreme court held that evidence of the recantation *could* justify a new trial if this evidence was significant enough that it would probably lead a jury to return a different verdict.

Indeed, in *State v. Alaska Continental Development Corp.*, 630 P.2d 977 (Alaska 1980), the supreme court indicated that "merely impeaching" and "likely to change the result of the trial" were simply the two sides of the same coin:

Concerning motions for a new trial based on newly discovered evidence, the evidence must be such as would probably change the result of the trial. . . . Evidence which merely impeaches a witness's testimony is not usually sufficient to warrant the grant of a new trial. . . .

In our opinion, the newly discovered evidence offered by the state in this case has no value beyond impeachment of [the appraiser] Follett's testimony. Evidence that Follett relied only upon high comparable sales in his appraisals in another condemnation case does not prove that he slanted his appraisals in the case at bar. No evidence was developed in this case, by cross-examination or otherwise, that

Follett selected and relied on certain comparisons to the exclusion of others in his appraisals. Follett's appraisals, like the other appraisals submitted by the landowner, incorporate comparable sales which are of higher value than several of those used by the state's appraisers, but this case is characterized by a lack of closely comparable sales to the subject property because of the uncertain market at the time of the taking.

. . .

The additional evidence was unlikely to change the result in this trial, even though it might have discredited Follett's testimony.

*Alaska Continental Development Corp.*, 630 P.2d at 992.

This view of matters is confirmed by the discussion of this point of law in Wayne R. LaFave, Jerold H. Israel, and Nancy J. King, *Criminal Procedure* (2nd ed.1999), § 24.11(d), Vol. 5, pp. 623–28.

The authors state that almost every American court uses a test essentially identical to the *Salinas* test. *Id.*, pp. 624–25. But then the authors explain that the distinction between evidence that merely impeaches, versus evidence that would probably produce a different result, is one of degree rather than kind:

[T]he evidence must reach a certain level of significance as measured by reference to the other evidence in the trial. . . . [T]he character of the evidence [as] cumulative [in] nature or [relating] only to witness credibility . . . [is relevant to assessing] the likelihood that [the evidence] will have a significant impact upon a factfinder [—*i.e.*, whether or not it will] probably produc[e] an acquittal.

*LaFave*, p. 625 (internal quotation marks omitted).

■ Thus, when *Salinas* speaks of evidence that is "merely cumulative or impeaching", it is referring to evidence that is unlikely to lead to a different verdict because it either is cumulative of the evidence previously available, or it simply reinforces the types of impeachment that were previously available. If, on the other hand, the newly discovered evidence undermines the government's case in a new and significant way, then the evidence is not "merely impeaching"—and the trial judge must determine whether this evidence, if presented at a new trial, would probably lead to a different verdict.

In Mooney's case, it appears that Judge Thompson relied on an overly broad definition of "impeaching" when he ruled that Mooney's new evidence (the evidence of S.M.'s purported recantations) was legally insufficient to warrant a new trial. If there is credible evidence that the purported victim of a crime later declared that their accusation was false, this evidence can be more than "merely impeaching" under the *Salinas* test.

It is fairly obvious from the record that Judge Thompson personally doubted the trustworthiness of this new evidence. But as our supreme court clarified in *James*, even though Judge Thompson may have personally concluded that the new evidence was not believable, he was nevertheless obliged to consider whether this evidence, if presented at a new trial, would probably produce a different verdict.

For this reason, we direct Judge Thompson to reconsider his ruling on Mooney's request for a new trial.

### Conclusion

We AFFIRM the superior court's rejection of Mooney's claim that, because he received purportedly incompetent advice from his trial attorney during pre-trial negotiations, he should now be allowed to demand specific performance of the State's proposed plea bargain.

However, we direct the superior court to reconsider two issues: first, whether Mooney should have been sentenced as a second felony offender, rather than a third felony offender; and second, whether Mooney should be granted a new trial based on his new evidence that the victim of the crime may have recanted her accusation.

The superior court shall make findings on these two issues and shall transmit those findings to us and to the parties within 60 days of our decision.

If the superior court again concludes that Mooney is not entitled to a new trial, Mooney shall have 30 days to file a supplemental memorandum addressing the superior court's ruling, and the State shall then have 30 days to file a responding memorandum. If, on the other hand, the superior court concludes that Mooney is entitled to a new trial, the order of briefing shall be reversed.