Forrest J. AHVAKANA, Appellant,

v.

STATE of Alaska, Appellee.

No. A–10665.

Court of Appeals of Alaska.

Aug. 17, 2012.

Rehearing Denied Sept. 17, 2012.

James M. Hackett, Law Office of James M. Hackett, for the Appellant.

Kenneth M. Rosenstein, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and John J. Burns, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and
MANNHEIMER and BOLGER, Judges.

## OPINION

BOLGER, Judge.

After observing evidence of a domestic violence assault, the police entered a trailer where the suspect, Forrest J. Ahvakana, was staying, found him hiding in a bedroom closet, and arrested him. Ahvakana argues that this entry and search were illegal. He also argues that the police unlawfully seized bloody clothing they found inside the trailer.

We conclude that the entry and search of the trailer were justified under the circumstances of this case. The police officers confronted an emergency situation involving domestic violence, and they had a legitimate need to locate the individuals involved in that violence. Once the police were lawfully inside the trailer, they were entitled to seize evidence that they observed in plain view.

Ahvakana additionally argues that the superior court abused its discretion by refusing to sever the charge that he committed a misdemeanor assault against his girlfriend from felony charges stemming from his attack on a different victim earlier that day. Ahvakana's argument on appeal is different from the argument he raised in support of his motion below, so he must show plain error. We find no plain error in the superior court's decision to deny the motion to sever the charges. Accordingly, we affirm Ahvakana's convictions.

### Background

On December 8, 2008, shortly after 9:00 a.m., North Slope Police Sergeant Jose Gutierrez III, Officer Vance Enderle, and police trainee Stephen Smith responded to a report that Billy Kaleak had been assaulted in Barrow. The officers found Kaleak at his mother's house, covered in blood "from head to toe, [with] blood running down from his face, down the front of him." Kaleak had "large lacerations to his head" and a "large pool of blood ... from behind his head on the floor."

Kaleak told the police that Forrest Ahvakana had hit him with an empty bottle of Jack Daniels, and that the assault had occurred next door, where Kaleak lived.

The police followed a blood trail leading to Kaleak's residence. There was a large amount of blood throughout the house. Officer Enderle testified, "The house was a total wreck, the tables overturned, broken glass all over the place."

While the officers were taking photographs and collecting evidence of this assault, they received a report that a woman, Dolly Patterson, had heard "what sounded like a female being beaten up out on Cakeatter Road." The officers responded to Cakeatter Road and contacted Patterson, who said that, while she was outside smoking a cigarette, she heard a woman screaming and crying, and a man yelling. Patterson could not identify exactly where the sounds came from, but she pointed the officers in the direction of a nearby home, where the officers spoke with Johnnie Ningeok. Ningeok told the officers that Ahvakana and his girlfriend, Ella Black, were staying with Ahvakana's sister at the trailer next door.

At this point, the officers believed Ahvakana was the suspect in two assaults. The officers approached the trailer with guns drawn and Enderle knocked on the door, but no one answered. Enderle and Smith tried to break the door in, but were unsuccessful. Ella Black eventually came to the door, naked and wrapped in a blanket. Through the window, Sergeant Gutierrez could see that Black had cuts on her face and blood on her hair, face, and neck. When Black opened the door, he observed that she was crying and shaking. Black told the officers that Ahvakana was not there, but they did not believe her. The police entered the residence. Officer Enderle searched the back bedroom and found Ahvakana hiding in a closet.

Ahvakana was charged with attempted first-degree murder,[1] first-and second-degree assault,[2] first-degree burglary,[3] and two

---

1. AS 11.41.100(a)(1)(A); AS 11.31.100.

2. AS 11.41.200(a)(1)-(3); AS 11.41.210(a)(1)-(2).

3. AS 11.46.300(a)(1).

counts of third-degree assault[4] for his attack on Billy Kaleak. He was charged with fourth-degree assault[5] for recklessly causing physical injury to Ella Black, or placing her in fear of imminent physical injury. Before trial, Ahvakana moved to suppress the evidence the police obtained when they entered and searched the trailer. Ahvakana also moved to sever the fourth-degree assault charge from the felony charges because of the risk that the more serious charges would unfairly prejudice his defense to the misdemeanor assault. Superior Court Judge Richard H. Erlich denied both motions. The trial jury acquitted Ahvakana of attempted murder and convicted him of the other offenses. He appeals.

## Discussion

### *The entry and search were valid under the emergency aid exception to the warrant requirement.*

Warrantless entries of a residence are unreasonable under the Fourth Amendment unless the State proves by a preponderance of the evidence that the police conduct fell within a recognized exception to the warrant requirement.[6] In *Gallmeyer v. State*, we ruled that a warrantless entry will be justified under the "emergency aid" exception if these three elements are met:

(1) The police must have reasonable grounds to believe that there is an emergency at hand and an immediate need for their assistance for the protection of life or property.

(2) The search must not be primarily motivated by intent to arrest [a person] and seize evidence.

(3) There must be some reasonable basis, approximating probable cause, to associate the emergency with the area or place to be searched.[7]

This three-prong test was adopted from a New York Court of Appeals case, *People v. Mitchell.*[8] Recently, in *State v. Gibson (Gibson II )*, the Alaska Supreme Court adopted the *Mitchell/Gallmeyer* standard as a matter of state constitutional law.[9]

In *Gibson II,* the police responded to a 911 call placed by a woman who reported that a man was threatening to stab her in the head.[10] When the police arrived at the scene, they heard a woman screaming inside the residence.[11] Moments later, the woman "tumbled out of the door" wearing only a tank top and screaming for help.[12] She was bleeding from a cut on the back of her head and her eye was swollen.[13]

Gibson appeared in the doorway of the trailer and the officers ordered him outside.[14] He was cooperative and the police took him into custody.[15] The woman was also placed in the back of a patrol car because she was "screaming and crying and carrying on."[16] She told the police there was no one left inside the trailer.[17] The officers, unsure whether the woman was telling the truth, waited for backup officers to arrive and then entered the trailer to search for anyone who might be injured.[18] They discovered a meth-

**4.** AS 11.41.220(a)(1)(B).

**5.** AS 11.41.230(a)(1), (3).

**6.** *Gallmeyer v. State*, 640 P.2d 837, 841 (Alaska App.1982).

**7.** *Id.* at 842.

**8.** *Id.* (citing *People v. Mitchell*, 39 N.Y.2d 173, 383 N.Y.S.2d 246, 347 N.E.2d 607, 609 (1976), *abrogated by Brigham City, Utah v. Stuart*, 547 U.S. 398, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006)).

**9.** 267 P.3d 645, 659 (Alaska 2012).

**10.** *Gibson v. State (Gibson I )*, 205 P.3d 352, 353 (Alaska App.2009), *rev'd, Gibson II*, 267 P.3d 645.

**11.** *Id.*

**12.** *Id.*

**13.** *Id.*

**14.** *Id.*

**15.** *Id.*

**16.** *Id.* at 354.

**17.** *Id.*

**18.** *Id.*

amphetamine laboratory and obtained a warrant to search the trailer for evidence of drug activity.[19]

The supreme court ruled that the entry and search of the trailer were justified by an ongoing emergency.[20] The court found that the police could not be certain under the circumstances whether Gibson and the woman who reported the assault were the only individuals involved in the domestic violence in the trailer.[21] The court noted that "[s]ilence from the trailer for the 25 minutes the officers waited for the backup officer to arrive was as equally consistent with someone lying injured in the trailer as it was with no one being in the trailer." [22]

> The court then declared the following rule:
> [W]here[ ] (1) the police respond to a domestic violence call and find serious domestic violence has occurred; and (2) it is unclear whether the police have accounted for everyone, especially children, who may have caused or been affected by the serious domestic violence, the police may have a reasonable belief that some unknown person(s) might be lying injured and enter the premises to search for possible victims.[23]

In this case, viewing the facts in the light most favorable to the superior court's ruling,[24] the police responded to a report of a possible domestic violence assault—"what sounded like a female being beaten up out on Cakeatter Road." The police were directed to the vicinity of the trailer where Ahvakana and his girlfriend, Black, were staying. The officers had just left the scene of a serious assault with a whiskey bottle, and Ahvakana had been identified as the perpetrator of that assault. When officers knocked on the door of the trailer, and then attempted, unsuccessfully, to push the door in, no one responded.

When Black finally came to the door, Sergeant Gutierrez observed through the window that she had cuts and blood on her face and that she was naked except for a blanket. When she opened the door, Gutierrez saw that she was shaking and crying. Black denied that Ahvakana was in the house, but Gutierrez believed, based on his observation and his past experience with victims of domestic violence, that she might be lying. He testified that, given these circumstances, he was concerned about Black's continued safety, the officers' safety, and the safety of anyone else who might still be in the trailer.

Officer Enderle likewise testified:

> I wanted to go through the house, secure it, and make sure there was nobody else in the house. We knew that ... the house belonged to Forrest's sister and that they were—they were staying there; [we] had no idea if there was anybody else in the house at that time, any children, any other adults in the house. We wanted to clear the house, and make sure there wasn't anybody else injured and—and locate Forrest [Ahvakana] at that time.

In *Gibson II*, the supreme court held that the first prong of the *Gallmeyer* test—the prong requiring the police to have reasonable grounds to believe there is an emergency at hand and an immediate need for their assistance in the protection of life or property—is satisfied if the police have good reason to believe there might be someone injured on the premises.[25] The court declared that when the police determine that serious domestic violence has occurred, and that it is unclear whether everyone who may have caused or been affected by that domestic violence has been accounted for, "the police may have a reasonable belief that some unknown person(s) might be lying injured and [may] enter the premises to search for possible victims." [26] The supreme court found that this prong of the *Gallmeyer* test was satisfied even though Gibson and his apparent victim were already outside the trailer in

---

19. *Id.*

20. *Gibson II,* 267 P.3d at 664.

21. *Id.*

22. *Id.*

23. *Id.* at 667.

24. *See State v. Miller,* 207 P.3d 541, 543 (Alaska 2009).

25. 267 P.3d at 667.

26. *Id.*

custody and the police had no specific information anyone else remained inside.[27]

In this case, the police had reason to believe Ahvakana was still inside the trailer, that Black might be in serious danger, and that there might be other victims. The police had been told that Ahvakana shared the trailer with both Black and his sister, and the police confirmed the address with dispatch. A neighbor had just reported a man yelling and a woman crying and screaming in the vicinity. Ahvakana had been implicated in a serious assault earlier that morning. And Ahvakana's girlfriend, Black, responded to the door of the trailer with fresh blood on her face, wearing only a blanket. Given these facts, we have no difficulty concluding that the first prong of the *Gallmeyer* test was satisfied in this case.

■ Ahvakana also argues that the State failed to prove the second prong of the *Gallmeyer* test, which requires that the search not be primarily motivated by the intent to arrest a person or seize evidence. But Sergeant Gutierrez testified that he "[d]idn't know if [Black] was by herself or there [were] other ... family members [inside the trailer]." He said he was concerned for Black's safety and for the safety of the responding officers. Officer Enderle likewise testified that the police "wanted to clear the house and make sure there wasn't anybody else injured." The superior court could reasonably conclude that when the police entered the trailer, their primary aim was not to initiate or further a criminal prosecution, but to ensure the safety of Black and any other victims who might be inside the residence.

27. *Id.* at 663–64.

28. *Gallmeyer,* 640 P.2d at 842.

29. *See Crittell v. Bingo,* 83 P.3d 532, 536 n. 19 (Alaska 2004) (holding that a reply brief "may raise no contentions not previously raised in either the appellant's or appellee's briefs" (quoting Alaska R.App. P. 212(c)(3))).

30. *See Gallmeyer,* 640 P.2d at 842–43, 845; *cf. Maryland v. Buie,* 494 U.S. 325, 334, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990) (holding that, incident to an arrest, officers could "look in closets

The third prong of the *Gallmeyer* test requires the police to have "some reasonable basis, approximating probable cause, to associate the emergency with the area or place to be searched." [28] Ahvakana conceded this prong at the suppression hearing, and he did not discuss it in his opening brief. In his reply brief, he argues for the first time that the officers exceeded the permissible scope of the search by looking through the "entire residence." This claim is waived because it was raised for the first time on appeal, in Ahvakana's reply brief.[29] In any event, the superior court reasonably could have found that the officers responded appropriately by searching the bedroom closet, where Ahvakana or another victim could be concealed.[30]

Ahvakana also raises a number of Fourth Amendment challenges to the entry and search that he did not advance in the superior court. We conclude that these claims were not preserved, and also that they have no merit.

### *The police lawfully seized the bloody clothing because it was in plain view.*

Ahvakana also challenges the police seizure of bloody clothing inside the trailer. Judge Erlich found that Black consented to the seizure of the clothing. We conclude that we need not decide that issue, because the police were authorized to seize evidence of a crime that they observed in plain view.[31]

■ Under Alaska law, a search must satisfy three requirements to fall within the plain view doctrine: (1) the initial intrusion that afforded the view must have been lawful; (2) the discovery of the evidence must have been inadvertent; and (3) the incriminating nature of the evidence must have been immediately apparent.[32] Ahvakana only dis-

and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched").

31. *See Lewis v. State,* 9 P.3d 1028, 1034, 1037 (Alaska App.2000) (noting that appellate courts are authorized to affirm a trial court ruling on any ground supported by the undisputed record).

32. *Reeves v. State,* 599 P.2d 727, 738 (Alaska 1979).

putes the first element—he argues that the seizure was illegal because the police were not lawfully inside the trailer. But as we already explained, the police entry and search were authorized under the emergency aid exception to the warrant requirement.

We acknowledge that the United States Supreme Court has held that, under the Fourth Amendment, the warrantless seizure of evidence in plain view is allowed even if the discovery of the evidence was not inadvertent.[33] But there is no dispute in this case that the evidence was inadvertently discovered, so we have no reason to decide whether Alaska should follow federal law in this regard.

### *The court properly denied the motion to sever the assault charges.*

■ In superior court, Ahvakana moved under Criminal Rule 14 for severance of the fourth-degree assault charge from the attempted murder and other charges.[34] He argued that he would be prejudiced by joinder of these offenses because the "vast majority" of the evidence related to the charge of attempted murder of Kaleak would not be admissible in a separate trial on the misdemeanor charge of assaulting Black.

On appeal, Ahvakana argues that the superior court should have granted his motion to sever the charges for a different reason that he did not advance in superior court: because the evidence of his fourth-degree assault on Black prejudiced his alibi defense to the felony charges involving Kaleak. Because Ahvakana did not raise this claim below, he must show plain error.[35]

At Ahvakana's trial, Black testified that Ahvakana was not at Kaleak's residence when the attack on Kaleak occurred. Ahva-kana argues that the evidence that Black lied to protect him from conviction on the charge that he committed a misdemeanor assault against her later that day undermined the credibility of Black's testimony that he had an alibi to the felony charges. He argues that he was therefore unfairly prejudiced by joinder.

If evidence of joined charges would be cross-admissible if the charges were tried separately, "the defendant is hard-pressed to show actual prejudice from the failure to sever, since the evidence would have been admitted even if the judge had granted separate trials." [36] The evidence that Ahvakana assaulted Black, and that Black lied to the police about that assault, was relevant to attack the credibility of Black's testimony in support of Ahvakana's alibi defense—to show the nature of Black's and Ahvakana's relationship, and to show that Black might be (as the State argued) "just protecting her man." The evidence of Ahvakana's assault on Black would therefore have been admissible in a separate trial on the felony charges involving Kaleak.

Ahvakana has not shown how this evidence prejudiced his trial on the felony charges, apart from its legitimate tendency to undermine the credibility of his defense. Furthermore, joinder of the charges was appropriate because the offenses were related, took place close in time, and involved overlapping evidence.[37] We conclude that Ahvakana has not shown plain error.

### *Conclusion*

We AFFIRM Ahvakana's convictions.

**33.** *Horton v. California,* 496 U.S. 128, 130, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990).

**34.** Alaska R.Crim. P. 14 provides in pertinent part:

> If it appears that a defendant or the state is unfairly prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants, or provide whatever other relief justice requires.

A showing that evidence of one offense would not be admissible during a separate trial of a joined offense or a codefendant does not constitute prejudice that warrants relief under this rule.

**35.** *See Punguk v. State,* 784 P.2d 246, 248 (Alaska App.1989).

**36.** *Pease v. State,* 54 P.3d 316, 322 (Alaska App. 2002).

**37.** Alaska R.Crim. P. 8(a).