NOTICE

*The text of this opinion can be corrected before the opinion is published in the* *Pacific* *Reporter.* *Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

| | |
|---|---|
| FORREST J. AHVAKANA, | Court of Appeals No. A-12713 |
| Appellant, | Trial Court No. 2BA-13-00182 CI |
| v. | |
| STATE OF ALASKA, | O P I N I O N |
| Appellee. | No. 2679 — September 25, 2020 |

Appeal from the Superior Court, Second Judicial District, Utqiagvik, Paul A. Roetman, Judge.

Appearances: Michael Jude Pate (opening brief), and Laurence Blakely (reply brief), Assistant Public Defenders, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant. Diane L. Wendlandt, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Jahna Lindemuth, Attorney General, Juneau, for the Appellee.

Before: Allard, Chief Judge, Harbison, Judge, and Suddock, Senior Superior Court Judge.[*]

Judge ALLARD, writing for the majority.
Judge SUDDOCK, concurring in part, and dissenting in part.

---

[*] Sitting by assignment made pursuant to Article IV, Section 11 of the Alaska Constitution and Administrative Rule 23(a).

Forrest J. Ahvakana was convicted, following a jury trial, of first-degree assault and was sentenced, pursuant to Alaska's three-strikes law, to a mandatory term of 99 years without parole. Ahvakana later filed an application for post-conviction relief, asserting that his attorney's ineffective assistance of counsel unfairly deprived him of a favorable plea bargain.[1] Relying on our prior decision in *Mooney v. State*,[2] the superior court dismissed the post-conviction relief application because it found that the requested relief was precluded based on the doctrine of "mutual mistake." For the reasons explained here, we reverse that ruling and remand this case for further proceedings consistent with the guidance provided here.

*Relevant background and prior proceedings*

In 2008, Ahvakana was indicted on multiple felony charges — attempted first-degree murder, first-, second-, and third-degree assault, and first-degree burglary.[3] These charges were based on an incident in which Ahvakana allegedly broke into a house in Utqiagvik and repeatedly hit a man over the head with an empty bottle of whiskey. Ahvakana was also separately charged with fourth-degree assault for allegedly assaulting his girlfriend that same day.[4]

Prior to trial, the prosecutor sent a letter offering to resolve the case pursuant to a Rule 11 plea agreement. Under the proposed agreement, Ahvakana would plead guilty to second-degree assault, first-degree burglary, and fourth-degree assault,

---

[1]   *See Lafler v. Cooper*, 566 U.S. 156 (2012); *Missouri v. Frye*, 566 U.S. 134 (2012).

[2]   *Mooney v. State*, 167 P.3d 81 (Alaska App. 2007).

[3]   AS 11.41.100(a)(1)(A) & AS 11.31.100(a); AS 11.41.200(a)(1), (2), (3); AS 11.41.210(a)(1), (2); AS 11.41.220(a)(1)(B); and AS 11.46. 300(a)(1), respectively.

[4]   AS 11.41.230(a)(1), (3).

and he would receive a composite sentence of 21 years with 4 years suspended (17 years to serve). Ahvakana would also admit the petitions to revoke probation in two other cases in which he had approximately 80 days left to serve. In exchange for these guilty pleas, the State would dismiss the attempted murder charge and the first-degree assault charge, as well as the two counts of third-degree assault.

In the letter, the prosecutor stated that the offer represented his "bottom line" and that it was contingent both on Ahvakana withdrawing his outstanding request for a bail hearing and on Ahvakana foregoing the filing of any motions in the case. The prosecutor related that the offer was based, in part, on the "difficulty with expenses and prosecutions in Barrow."

The prosecutor also stated what he believed to be the applicable presumptive sentences that Ahvakana faced in this case. According to the prosecutor, if Ahvakana was convicted at trial, he faced a mandatory 99-year sentence on the attempted first-degree murder count and a discretionary 40 to 99-year sentence on the first-degree assault count. (As we explain later, the prosecutor was mistaken as to Ahvakana's exposure on the first-degree assault count. Because of Alaska's three-strikes law, Ahvakana actually faced a *mandatory* 99-year sentence without parole if convicted on that count.[5])

Ahvakana was represented by a private attorney in Utqiagvik who had been practicing law for two years, initially with the District Attorney's Office. Based on outdated materials from his time as a prosecutor, the attorney erroneously concluded that Ahvakana only faced a sentence of 15 to 20 years if convicted of the first-degree assault

---

[5] AS 12.55.125(l)(3) (specifying that a defendant convicted of an unclassified or class A felony "shall be sentenced to a definite term of imprisonment of 99 years when the defendant has been previously convicted of two or more most serious felonies" and that imprisonment for the prescribed definite term may not be suspended or reduced).

count at trial. The attorney advised Ahvakana that he believed that Ahvakana had a "very low, low chance" of being convicted on the attempted murder count, and that therefore Ahvakana's primary exposure was the 15 to 20 years he would face on the first-degree assault count — advice he later admitted was "wildly incorrect."

The attorney nevertheless advised Ahvakana to accept the State's plea offer. But this advice was conveyed in a way that the attorney later characterized as a "soft suggestion," in contrast to the far more robust "hard suggestion" he would have given Ahvakana if he had understood that Ahvakana actually faced a mandatory 99-year sentence if convicted of first-degree assault at trial.

According to the attorney's deposition testimony in the post-conviction relief case, Ahvakana was unwilling to accept the prosecutor's offer. The attorney testified that Ahvakana was steadfast that he was innocent and that he did not want to go to jail "for 7 or 10 years" for something he did not do. Ahvakana also wanted to file various suppression motions based on what he believed was police misconduct, and Ahvakana understood that the prosecutor's offer would be withdrawn if these motions were filed.

In accordance with these wishes, the attorney filed various motions to suppress, thereby rejecting the prosecutor's offer. No further plea offers were made by either party. The superior court later denied the motions to suppress, and Ahvakana's case proceeded to trial. The jury ultimately acquitted Ahvakana of the attempted murder count but convicted him of the remaining charges, including the first-degree assault count.

While preparing for the sentencing hearing, both the prosecutor and defense counsel independently realized that Ahvakana was subject to a mandatory 99-year term without parole for his first-degree assault conviction. However, Ahvakana's attorney apparently did not inform Ahvakana of this fact until the day of the sentencing hearing.

At the hearing, the superior court sentenced Ahvakana to the required 99 years without parole on the first-degree assault conviction. The court also sentenced Ahvakana to a consecutive year to serve on the fourth-degree assault conviction, for a composite sentence of 100 years to serve.

Ahvakana appealed his convictions to this Court, primarily arguing that the superior court erred when it denied one of his motions to suppress. This Court affirmed the trial court's denial of the motion to suppress and affirmed Ahvakana's convictions.[6]

*The post-conviction relief proceedings*

Following resolution of his direct appeal, Ahvakana filed an application for post-conviction relief. In his affidavit, Ahvakana asserted that his attorney had incompetently advised him that he faced only 15 to 20 years on the first-degree assault count. He claimed that if he had understood his true exposure of 99 years without parole, he would have accepted the State's plea offer.

Pursuant to Alaska Criminal Rule 35.1(g), the parties stipulated to submit deposition testimony in lieu of an evidentiary hearing. In his deposition, Ahvakana testified that he was innocent of the crimes for which he was convicted, and that he wanted to file his suppression motion and go to trial. But he also testified that he would have taken the Rule 11 plea offer "in a heartbeat" had he known that he was facing 99 years in jail. Ahvakana acknowledged that he had never pleaded guilty to a crime he did not commit "just to make the case go away."

The defense attorney acknowledged that he had incorrectly advised Ahvakana that he was only facing 15 to 20 years on the first-degree assault count. But he testified that he was "unsure if it would change anything" if he had correctly advised

---

6   *Ahvakana v. State*, 283 P.3d 1284 (Alaska App. 2012).

Ahvakana as to his true exposure on that count. He noted that Ahvakana was "steadfast" in maintaining his innocence and was very invested in filing the motion work. However, when asked directly whether Ahvakana would have changed his mind about the offer had he understood the mandatory sentence he was facing, the attorney stated, "Well, I think it's very possible that he could have changed it. Is it probable? I don't know."

The prosecutor in the case testified that, when he made the plea offer, he had also consulted a "cheat sheet" for the applicable sentencing range, and he had forgotten that the recently enacted three-strikes law had changed what was a discretionary 40 to 99-year term to a mandatory 99-year term without parole. He did not realize that Ahvakana was subject to the three-strikes' 99-year term without parole until he began preparing for sentencing.

The prosecutor further testified that he never received a defense counteroffer, nor did he make another offer before Ahvakana filed his motion work. He confirmed that he did not engage in any negotiations or discussions with the defense after the motions were filed and he had traveled to Utqiagvik to work on the case. The prosecutor stated that it was clear from talking to the defense attorney that the case "wasn't going to resolve" and that "Mr. Ahvakana . . . wanted a trial, wanted his day in court."

After reviewing the deposition testimony and the parties' briefing, the superior court denied Ahvakana's application for post-conviction relief under both the state and federal constitutions. In its written order, the court relied heavily on our prior case *Mooney v. State* and viewed *Mooney* as dispositive of Ahvakana's claim under the Alaska Constitution. The court found that the parties had been operating under a "mutual mistake" as to Ahvakana's true sentencing exposure when the prosecutor's plea offer was made and rejected. The court therefore concluded that, as in *Mooney*, Ahvakana was not entitled to specific performance of the State's plea offer, even if he

established that he had received ineffective assistance of counsel. The court also concluded that Ahvakana had failed to prove a "reasonable probability" that he would have taken the plea offer if he had received competent advice, and that Ahvakana was therefore not entitled to any remedy under the federal constitution either.

*Why we conclude that the doctrine of mutual mistake does not bar relief in this case*

To prove an ineffective assistance of counsel claim under the Alaska Constitution, Ahvakana was required to show (1) that his attorney performed below the competency level required of criminal law practitioners; and (2) that there is a reasonable possibility that the attorney's deficient performance affected the outcome of the case.[7]

In the current case, there is no dispute that Ahvakana met the first prong of this test. That is, there is no dispute that it was incompetent for the defense attorney to advise Ahvakana that he would face 15 to 20 years to serve if he was convicted of first-degree assault when, in reality, he faced a mandatory sentence of 99 years without parole to serve if convicted of that charge. What is disputed, however, is whether Ahvakana can show that he was actually prejudiced by this incompetent advice.

In the trial court proceedings, the State made two separate arguments regarding the prejudice prong. First, the State argued that Ahvakana had not proven that he would have accepted the plea offer if he had received competent advice. Second, the State argued that, in any case, the plea offer was unenforceable based on the contractual doctrine of "mutual mistake."

---

[7] *Risher v. State*, 523 P.2d 421, 424-25 (Alaska 1974); *Garay v. State*, 53 P.3d 626, 628 (Alaska App. 2002).

The State derived its mutual mistake argument from our decision in *Mooney v. State*.[8] Mooney was charged with first-degree sexual assault. Prior to trial, the State extended two successive plea offers, both of which were based on the parties' shared mistaken belief that Mooney was only a second rather than a third felony offender.[9] The first offer permitted Mooney to plead guilty to attempted first-degree sexual assault with a 10-year presumptive term (which was the presumptive term for second felony offenders). The second offer permitted him to plead guilty to second-degree sexual assault with a 4-year presumptive term (which, again, was the presumptive term for second felony offenders).[10]

Mooney rejected both plea offers and was later convicted at trial of first-degree sexual assault. At sentencing, the trial court ruled that he was a *third* felony offender and that he therefore faced a presumptive term of 25 years' imprisonment on the first-degree sexual assault charge. Mooney was then sentenced in accordance with this presumptive term.[11]

Mooney filed an application for post-conviction relief, asserting that he had received ineffective assistance of counsel with regard to the two plea offers because his attorney had mistakenly told him that he only faced a presumptive term of 15 years on the first-degree sexual assault charge when, in reality, he faced a presumptive term of 25 years. Mooney argued that the proper remedy for this ineffective assistance of counsel

---

[8]   *Mooney v. State*, 167 P.3d 81, 87-89 (Alaska App. 2007).

[9]   *Id.* at 87.

[10]   *Id.*

[11]   *Id.* at 84.

was to reverse his conviction, allow him to plead to one of the original offers, and to re-sentence him accordingly.[12]

This Court disagreed. We concluded that Mooney's claim was "governed by the law of contracts that applies when the parties are laboring under a mutual mistake concerning a material fact."[13] As explained in the Restatement (Second) of Contracts,

> Where a mistake of both parties at the time a contract was made as to a basic assumption on which the contract was made has a material effect on the agreed exchange of performances, the contract is voidable by the adversely affected party unless [that party] bears the risk of the mistake . . . .[14]

Thus, the party seeking to void the contract must prove: (1) that the mistake relates to a "basic assumption on which the contract was made"; (2) that the mistake has a "material effect on the agreed exchange of performances"; and (3) that the party seeking relief does not bear the risk of the mistake.[15]

In Mooney's case, we concluded that "the prosecutor's and the defense attorney's mutual mistake concerning Mooney's presumptive sentencing status — *i.e.*, their mistaken mutual belief that Mooney was a second felony offender — was obviously

---

[12]  *Id.* at 87.

[13]  *Id.* at 88.

[14]  Restatement (Second) of Contracts § 152(1) (Am. Law Inst. 1981).

[15]  *Id.* at § 152 cmt. a; *see Stormont v. Astoria Ltd.*, 889 P.2d 1059, 1061 (Alaska 1995); *Mooney*, 167 P.3d at 88; *see also United States v. Frownfelter*, 626 F.3d 549, 556 (10th Cir. 2010) (reiterating the mutual mistake doctrine's three-part test in the context of plea agreements); *United States v. Cieslowski*, 410 F.3d 353, 362 (7th Cir. 2005) (noting that "the analysis of ordinary mutual mistake [in plea agreements] follows contract law").

a basic premise of the pre-trial negotiations."[16] The mutual mistake also had a "material effect" on the prosecutor's plea offer because the sentences in the plea offer only applied to a second felony offender and would have been illegal as applied to a third felony offender.[17] Moreover, because it was "simply impossible to say" what kind of plea offer the prosecutor might have made if he had known that Mooney was a third felony offender, we concluded that Mooney was not entitled to demand specific performance of the prosecutor's offer, even if his attorney gave him incompetent advice regarding the applicable presumptive term.[18]

The facts of *Mooney* are distinguishable from the facts of the current case. Here, there was no "mutual" mistake that went to the basic premise of the pretrial negotiations. Although both the prosecutor and the defense attorney were mistaken regarding Ahvakana's sentencing exposure, they were mistaken in different ways. The prosecutor's mistake was in thinking that Ahvakana faced a *discretionary* 40 to 99-year sentence rather than a *mandatory* 99-year term on the first-degree assault charge. But the prosecutor was nevertheless aware that a 99-year term was a possibility when he made his offer for Ahvakana to plead to lesser charges and receive a composite sentence of 17 years to serve — a sentence below the maximum authorized for those lesser charges.[19]

---

[16] *Mooney*, 167 P.3d at 88.

[17] *Id.*

[18] *Id.* at 82, 88-89.

[19] The prosecutor was also aware that he had only consulted a "cheat sheet" when he issued the formal plea offer, and he knew that he had not actually reviewed the applicable sentencing statutes. Under the Restatement, "[a] party bears the risk of a mistake when he is aware, at the time the contract is made, that he has only limited knowledge with respect

(continued...)

The defense attorney's mistake was far more egregious. He believed that Ahvakana only faced 15 to 20 years to serve if convicted of first-degree assault, and the attorney persisted in this erroneous belief even after receiving the prosecutor's offer letter stating that Ahvakana's exposure was far greater.

Importantly, there is nothing in the record to suggest that the prosecutor's mistake had any material effect on the prosecutor's offer.[20] In his letter accompanying the offer, the prosecutor made clear that the offer was being extended primarily because of the expense of going to trial in Utqiagvik. And, as already noted, the prosecutor was willing to have Ahvakana plead to lesser charges and receive a sentence that was *below* the maximum sentence authorized for those charges, despite the prosecutor's understanding that Ahvakana faced a mandatory 99-year term on the attempted murder charge and a possible 99-year term on the first-degree assault charge.

---

[19] (...continued)
to the facts to which the mistake relates but treats his limited knowledge as sufficient." Restatement (Second) of Contracts § 154(b) (Am. Law Inst. 1981). Ahvakana argues that because the prosecutor was in a superior bargaining position and because the prosecutor was willing to extend an offer based only on his cheat sheet, the prosecutor should be viewed as having borne the risk of his mistake. We conclude that we need not decide this question here because the other requirements for mutual mistake are not met.

[20] *See Frownfelter*, 626 F.3d at 555-57 (holding that an agreement where the defendant pleaded guilty to a misdemeanor in exchange for the dismissal of felony counts was not voidable on the basis of mutual mistake because "nothing in the language of the plea agreement indicates that the distinction between misdemeanor and felony was a basic assumption of the plea agreement" and the "government has not provided any basis to conclude that the felony/misdemeanor distinction was particularly meaningful"); *Cieslowski*, 410 F.3d at 362 (finding no mutual mistake when the parties' erroneous assumption that pre-amendment sentencing guidelines were still in force "did not go to a basic assumption of the agreement or affect the agreed exchange of performances" because there was no indication "that the parties intended the specified sentence to be contingent on a particular method of calculating the sentence").

Most importantly, unlike in *Mooney*, there was nothing illegal about the prosecutor's plea offer.[21]  Whereas Mooney's plea agreement was unenforceable on its face, the plea offer in this case had no such deficiencies.  In other words, the two factors that grounded our decision in *Mooney* — the illegal sentence that would not have been offered but for the mistake, and the attendant uncertainty about what *would* otherwise have been offered — are not present in the instant case.

Accordingly, we conclude that the State's theory that the doctrine of mutual mistake governs the plea offer made in this case is without merit, and the trial court's reliance on *Mooney* in its written order was therefore misplaced.

*Why we conclude that a remand for further litigation is required*

The question still remaining, however, is whether Ahvakana has adequately shown that he was prejudiced by his attorney's incompetent advice.  The superior court did not reach this issue under the Alaska Constitution because it reasoned that *Mooney* governed (and barred) Ahvakana's claim for relief under the Alaska Constitution.

The court nevertheless proceeded to address Ahvakana's ineffective assistance of counsel claim under the federal constitution.[22]  In the context of plea

---

[21]   *See Mooney*, 167 P.3d at 88; *see also State v. Barber*, 248 P.3d 494, 503 (Wash. 2011) (en banc) (holding that the defendant was not entitled to specific performance of an illegal plea agreement based on mutual mistake because "[b]y enforcing a sentence outside [the] bounds [of sentencing laws], the court would be invading the legislature's prerogative").

[22]   Typically, courts address federal constitutional claims first because a state constitutional claim can be *more* protective than the federal constitutional claim, but it cannot be less protective.  *See, e.g.*, *Galvan v. Alaska Dep't of Corr.*, 397 F.3d 1198, 1203 & n.14 (9th Cir. 2005) (collecting cases that demonstrate that "Alaska law . . . is more protective of defendants' rights than the federal constitutional minimum"); *Burnor v. State*, 829 P.2d 837,

(continued...)

agreements where, as here, the defendant rejected a plea agreement due to ineffective advice, the seminal United States Supreme Court case is *Lafler v. Cooper*.[23]  To prove prejudice under *Lafler*, Ahvakana was required to show that:

> [B]ut for the ineffective advice of counsel there is a *reasonable probability* that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.[24]

The United States Supreme Court defines "a reasonable probability" as "a probability sufficient to undermine confidence in the outcome."[25]  It does not require the defendant to show that a different outcome was "more likely than not."[26]  The Alaska constitutional

---

22    (...continued)
839 (Alaska App. 1992) ("Alaska's equal protection and due process clauses confer broader protection than do their federal counterparts.").

23    *Lafler v. Cooper*, 566 U.S. 156 (2012).

24    *Id.* at 164 (emphasis added); *see also Missouri v. Frye*, 566 U.S. 134, 148 (2012) ("In order to complete a showing of *Strickland* prejudice, defendants who have shown a reasonable probability they would have accepted the earlier plea offer must also show that, if the prosecution had the discretion to cancel it or if the trial court had the discretion to refuse to accept it, there is a reasonable probability neither the prosecution nor the trial court would have prevented the offer from being accepted or implemented.").

25    *Strickland v. Washington*, 466 U.S. 668, 694 (1984).

26    *Id.* at 693 ("[W]e believe that a defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case."); *see Lambert v. State*, 435 P.3d 1011, 1020 (Alaska App. 2018) (recognizing the "specialized legal meaning" of
(continued...)

standard of "reasonable possibility" is lower than the federal "reasonable probability" standard.[27]

Here, the superior court found that Ahvakana had failed to establish "a reasonable probability" of a different outcome if his attorney had acted competently. But the superior court never applied the more lenient standard of "a reasonable possibility" under the Alaska Constitution.

To establish prejudice under the Alaska Constitution, Ahvakana must show that there is a *reasonable possibility* that the outcome of the case would have been different.[28] In making this determination, the court should look to the circumstances that existed at the time the offer was made and the incompetent advice was given, rather than the circumstances that existed after Ahvakana went to trial.

Because the superior court failed to apply the "reasonable possibility" standard, we conclude that a remand for consideration of whether Ahvakana has established prejudice under the Alaska Constitution is required.

If the superior court determines that Ahvakana has shown a reasonable possibility that, but for his attorney's deficient performance, the outcome of his case would have been different, the court must turn to the question of what remedy is

_____

[26] (...continued)
"reasonable probability").

[27] *See State v. Jones*, 759 P.2d 558, 572 (Alaska App. 1988) (explaining that Alaska's prejudice prong of the ineffective assistance of counsel standard is "significantly less demanding" than the federal standard).

[28] *Garay v. State*, 53 P.3d 626, 629 (Alaska App. 2002) ("[T]he question is whether there is a reasonable possibility that [certain] new information would have affected [counsel's] advice to [the defendant] or [the defendant's] evaluation of his situation and his decision to accept or reject the State's offer.").

appropriate for this constitutional violation. As the parties acknowledge, this remains an open question under Alaska law.

The *Lafler* Court held that even if a defendant establishes ineffective assistance of counsel, the trial court still must determine "what constitutes an appropriate remedy."[29] The remedy "must 'neutralize the taint' of a constitutional violation, while at the same time not grant a windfall to the defendant or needlessly squander the considerable resources the State properly invested in the criminal prosecution."[30]

When a defendant's "sole advantage" under the foregone plea was a lesser sentence, then "the court may exercise discretion in determining whether the defendant should receive the term of imprisonment the government offered in the plea, the sentence he received at trial, or something in between."[31] There are other cases in which "resentencing alone will not be full redress for the constitutional injury" — *i.e.*, where "an offer was for a guilty plea to a count or counts less serious than the ones for which a defendant was convicted after trial, or if a mandatory sentence confines a judge's sentencing discretion after trial."[32] In these instances, "the proper exercise of discretion to remedy the constitutional injury may be to require the prosecution to reoffer the plea proposal," after which the judge can "exercise discretion in deciding whether to vacate the conviction from trial and accept the plea or leave the conviction undisturbed."[33]

---

[29] *Lafler*, 566 U.S. at 170-71; 5 Wayne R. LaFave et al., *Criminal Procedure* § 21.3(b), at 838 (4th ed. 2015).

[30] *Lafler*, 566 U.S. at 170 (internal citation omitted).

[31] *Id.* at 170-71; 5 Wayne R. LaFave et al., *Criminal Procedure* § 21.3(b), at 838 (4th ed. 2015).

[32] *Lafler*, 566 U.S. at 171.

[33] *Id.*; 5 Wayne R. LaFave et al., *Criminal Procedure* § 21.3(b), at 838 (4th ed. 2015).

The *Lafler* Court declined to define the boundaries of proper judicial discretion in either situation and, instead, left this difficult task for lower courts to consider in the first instance. According to the Court, "[p]rinciples elaborated over time in decisions of state and federal courts, and in statutes and rules, will serve to give more complete guidance as to the factors that should bear upon the exercise of the judge's discretion."[34]

Since *Lafler*, state and lower federal courts have taken different approaches, including requiring specific performance of the original plea offer or ordering a new trial.[35] In Ahvakana's case, the parties should have the opportunity to fully brief this

---

[34] *Id.* at 171. The U.S. Supreme Court nevertheless noted two relevant factors for a trial court to consider in exercising this discretion: (1) "a defendant's earlier expressed willingness, or unwillingness, to accept responsibility for his or her actions"; and (2) any information concerning the crime that was discovered after the plea offer was made in order to fashion a remedy that does not require the prosecution to incur the expense of conducting a new trial. *Lafler*, 566 U.S. at 171-72. As Professor LaFave recognized, "lower courts will doubtless experience difficulty in working out the result in the more complicated scenarios." 5 Wayne R. LaFave et al., *Criminal Procedure* § 21.3(b), at 839 & n.68 (4th ed. 2015) (providing an illustration of such complications arising with the case *Titlow v. Burt*, 680 F.3d 577 (6th Cir. 2012), *rev'd*, *Burt v. Titlow*, 571 U.S. 12 (2013)).

[35] *See, e.g.*, *Wiggins v. United States*, 900 F.3d 618 (8th Cir. 2018) (affirming district court's remedy of ordering the government to reoffer the defendant only one of two plea bargains originally proposed); *United States v. Merlino*, 109 F. Supp. 3d 368 (D. Mass. 2015) (finding that counsel's deficient performance in failing to convey oral plea offer to defendant constituted ineffective assistance of counsel and, as a remedy, ordering U.S. Attorney's Office to extend plea offer to defendant on terms proposed fourteen years earlier); *State v. Estrada*, 2018 WL 2925776 (N.J. App. June 12, 2018) (unpublished) (concluding that the "interests of justice" warranted a reinstatement of the original negotiated plea); *State v. Estes*, 395 P.3d 1045 (Wash. 2017) (affirming lower court's decision to order a new trial as a remedy for ineffective assistance of counsel during the plea bargaining process); *Commonwealth v. Steckley*, 128 A.3d 826 (Pa. Super. 2015) (reversing post-conviction relief court's remedy of awarding defendant a new trial and ordering the court to resentence him

(continued...)

issue to the trial court given our conclusion that the State's *Mooney* analysis is erroneous.[36]

*Conclusion*

We VACATE the superior court's judgment and REMAND this case to the superior court for further proceedings consistent with this opinion. We do not retain jurisdiction.

---

[35] (...continued) according to the plea bargain that he had previously rejected due to his attorney's deficient performance).

[36] The dissent would decide on the record and briefing before us the two issues identified for remand. But the superior court did not rule on these issues. Although we may eventually come to agree with the dissent on the merits, we do not share the dissent's confidence in the Court's ability to resolve these issues without the full benefit of the adversarial process. *Cf. Pierce v. State*, 261 P.3d 428, 433 (Alaska App. 2011).

Judge SUDDOCK, concurring in part, and dissenting in part.

I concur with the majority's holding that the superior court erred in its legal conclusion that the doctrine of mutual mistake justified denial of Ahvakana's claim for relief under the Alaska Constitution. But rather than remanding the case for further briefing, I would instead remand with instruction to the superior court to order the State to once again proffer the plea offer it made pretrial.

The majority's remand order sets two tasks for the superior court. First, the court is to determine whether Ahvakana has shown prejudice. In order to show prejudice, under established Alaska law, Ahvakana must "create a reasonable doubt that [his attorney's] incompetence contributed to the outcome."[1] This means that Ahvakana must establish a reasonable possibility that, properly advised, he would have accepted the offer, that the prosecutor would not have subsequently withdrawn the accepted offer, and that the judge would not have rejected the parties' bargain.[2]

If the superior court had rejected Ahvakana's application for post-conviction relief due to a failure of proof on any of those requisites, I believe that, on the current record, we would then have been compelled to find error in such a rejection. Even though Ahvakana claimed factual innocence at the time that the offer was made, it is quite simply absurd to profess that there was *no* reasonable possibility that Ahvakana would have accepted the prosecutor's offer had he been properly informed of his exposure to Alaska's heaviest criminal penalty — especially if he was informed by a defense attorney adamantly counseling him to accept the plea offer.

---

[1]  *Risher v. State*, 523 P.2d 421, 425 (Alaska 1974).

[2]  *See Lafler v. Cooper*, 566 U.S. 156, 164 (2012).

And our conclusion today — that the prosecutor's mistake of law had no effect on his plea offer — establishes, at a minimum, a reasonable possibility that the prosecutor would not have withdrawn the offer even if he had discovered his mistake before Ahvakana entered a plea. Finally, as a matter of law, a judge might reasonably have accepted Ahvakana's plea entailing a sentence of 17 years.[3]

For these reasons, there is simply no need to remand the case to have the superior court enter findings on the issue of prejudice.

The second task that the majority assigns to the superior court is, if the court finds prejudice, to order briefing on the appropriate remedy. The majority points to the U.S. Supreme Court's decision in *Lafler v. Cooper*[4] as a starting place for discussion. But *Lafler* suggests that the present situation — a rejected plea bargain followed by the defendant's conviction on a greater charge, which would have been dismissed pursuant to the plea bargain's terms, and an ensuing much lengthier sentence than the plea bargain proposed — is the situation *most appropriate* for the remedy of specific performance of a plea bargain:

> In some situations it may be that resentencing alone will not be full redress for the constitutional injury. If, for example, an offer was for a guilty plea to a count or counts less serious than the ones for which a defendant was convicted after trial, or if a mandatory sentence confines a judge's sentencing discretion after trial, a resentencing based on the conviction at trial may not suffice. In these circumstances, the proper

---

[3] The prosecutor's offer included Ahvakana pleading guilty to second-degree assault with a corresponding sentence of 10 years flat, first-degree burglary with a corresponding sentence of 10 years with 6 years to serve, and fourth-degree assault with a corresponding sentence of 1 year to serve. This composite sentence of 17 years to serve comported with the applicable sentencing statutes. *See* AS 12.55.125(d) and AS 12.55.135(a).

[4] *Lafler v. Cooper*, 566 U.S. 156 (2012).

> exercise of discretion to remedy the constitutional injury may
> be to require the prosecution to reoffer the plea proposal.[5]

And while *Lafler* gives a parting nod to a vague notion of overarching judicial discretion to formulate a lesser remedy than specific performance,[6] the State does not argue that some particular circumstance renders specific performance an unjust remedy in this case.

Accordingly, I conclude that we should fully resolve this case on the facts and the legal arguments already before us, by directing the superior court to order the State to reoffer the plea agreement.

---

[5]  *Id.* at 171 (internal citations omitted).

[6]  *Id.*