NOTICE

*The text of this opinion can be corrected before the opinion is published in the* <u>*Pacific Reporter*</u>*. Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.gov*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

| | |
|---|---|
| FORREST J. AHVAKANA,<br><br>     Appellant,<br><br>   v.<br><br>STATE OF ALASKA,<br><br>     Appellee. | Court of Appeals No. A-13926<br>Trial Court No. 2BA-08-00519 CR<br><br>**O P I N I O N**<br><br>No. 2782 — June 28, 2024 |

Appeal from the Superior Court, Second Judicial District, Utqiagvik, Paul A. Roetman, Judge.

Appearances: Michael A. Stepovich, Stepovich Law Office, Fairbanks, for the Appellant. Diane L. Wendlandt, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Treg R. Taylor, Attorney General, Juneau, for the Appellee.

Before: Allard, Chief Judge, and Harbison and Terrell, Judges.

Judge ALLARD.

This case comes to us under unique circumstances: Forrest J. Ahvakana was originally convicted, following a jury trial, of first-degree assault, burglary, and other related offenses. He received a composite sentence of 100 years to serve. But before going to trial, Ahvakana (relying on the incompetent advice of his attorney about the sentence he could receive if convicted of first-degree assault) rejected an offer to

plead guilty to second-degree assault, first-degree burglary, and-fourth degree assault, and to be sentenced to a composite term of 21 years with 4 years suspended — *i.e.*, 17 years to serve. After his conviction, Ahvakana filed a successful application for post-conviction relief, alleging ineffective assistance of counsel under *Lafler v. Cooper*.[1] To remedy the ineffective assistance of counsel, the superior court required the State to reoffer the original plea and sentencing agreement. The State later requested that it be allowed to argue against the original proposed sentence, and when Ahvakana did not object, the superior court agreed that the State could do so.

Ahvakana subsequently entered pleas to second-degree assault, first-degree burglary, and fourth-degree assault, and the case proceeded to sentencing.[2] At sentencing, the prosecutor argued that 17 years to serve was too lenient. The superior court agreed that 17 years to serve was too lenient in light of Ahvakana's criminal history and the seriousness of the conduct in this case. The court therefore sentenced Ahvakana to 21 years to serve, the highest possible composite sentence for the crimes of conviction. Ahvakana now appeals his sentence.

On appeal, Ahvakana argues (for the first time) that it was error for the superior court to allow the prosecutor to argue against imposition of the sentence set out in the State's original offer. According to Ahvakana, the prosecutor's actions constituted a breach of the plea agreement and thus his sentence should be vacated and his case remanded for resentencing.

Because Ahvakana did not object to the superior court's order allowing the State to argue against the sentence set out in the State's original offer, he must show plain error on appeal.

---

[1] *Ahvakana v. State*, 475 P.3d 1118, 1119-20 (Alaska App. 2020); *see also Lafler v. Cooper*, 566 U.S. 156 (2012).

[2] AS 11.41.210(a)(1), AS 11.46.300(a)(1), and AS 11.41.230(a)(1), respectively.

Although we agree with Ahvakana that, as a general matter, the State cannot argue against a sentencing agreement to which it is a party, we conclude that this rule does not apply to the unique facts presented here — where the State was ordered to reoffer a plea agreement, that the defendant had rejected, as a remedy for defense counsel's ineffective assistance of counsel. Because we conclude that the court was within its discretion to craft a remedy that allowed Ahvakana to receive the potential benefit of the original plea agreement, while still allowing the State to argue against the sentencing component, we find no plain error.

Ahvakana also argues that his sentence is excessive. Having independently reviewed the record, we conclude that the sentence is well-supported and not clearly mistaken.

*Background facts*

This is the third time Ahvakana's case has come before this Court. In Ahvakana's first appeal — his direct appeal from his criminal trial — we affirmed his convictions for first-degree assault, second-degree assault, first-degree burglary, third-degree assault, and fourth-degree assault.[3] Ahvakana did not challenge his 100-year sentence in his direct appeal.

After we affirmed his convictions, Ahvakana filed an application for post-conviction relief.[4] In his application, Ahvakana explained that prior to trial, the prosecutor had sent a letter offering to resolve the case pursuant to an Alaska Criminal Rule 11 plea agreement. Under the agreement, Ahvakana would plead guilty to second-degree assault, first-degree burglary, and fourth-degree assault, and he would receive a

---

[3]   *Ahvakana v. State*, 283 P.3d 1284, 1289 (Alaska App. 2012).

[4]   *Ahvakana*, 475 P.3d at 1119-20.

composite sentence of 21 years with 4 years suspended (17 years to serve). Ahvakana rejected the deal pursuant to his attorney's advice.[5]

As it turned out, however, both the prosecutor and the defense attorney were mistaken about Ahvakana's potential exposure on the first-degree assault count: the prosecutor believed Ahvakana faced a discretionary 40 to 99-year sentence; Ahvakana's attorney believed he would likely receive 15 to 20 years. But under Alaska's three-strike law, Ahvakana actually faced a *mandatory* 99-year sentence without parole if convicted of first-degree assault — *i.e.*, the sentence he ultimately received on that count after trial.[6]

In his application for post-conviction relief, Ahvakana argued that his attorney's incompetent advice had led him to reject the plea deal.[7] He asserted that if he had understood his true exposure of a mandatory 99 years without parole, he would have accepted the State's offer, and he argued that the proper remedy was specific performance of the State's plea offer. The superior court initially rejected this argument, holding that because both parties had been operating under a "mutual mistake" as to Ahvakana's true sentencing exposure, Ahvakana was not entitled to specific performance of the plea agreement.[8]

On appeal (*i.e.*, Ahvakana's second appeal before this Court), we reversed and remanded for further proceedings.[9] We explained that although both the prosecutor and the defense attorney made mistakes, there was no "mutual mistake" that went to

---

[5] *Id.* at 1120-21.

[6] *Id.* at 1121.

[7] *Id.*

[8] *Id.* at 1122.

[9] *Id.* at 1126.

the basic premise of the pretrial negotiations.[10] Instead, the parties were mistaken in different ways, and the prosecutor's mistake did not affect the viability of the offer.[11]

We remanded for further litigation on two questions. First, had Ahvakana shown a "reasonable possibility" that the outcome of the case would have been different but for his attorney's incompetence — *i.e.*, had Ahvakana shown a reasonable possibility that he would have accepted the State's original plea offer if he had received competent advice?[12] Second, if Ahvakana had shown a reasonable possibility he would have accepted the State's original offer, what was the appropriate remedy under Alaska law?[13]

On remand, the superior court resolved both questions in Ahvakana's favor — that is, the court found that Ahvakana had shown a "reasonable possibility" that he would have accepted the offer, and it determined that the appropriate remedy was to require the State to reoffer the original plea and sentencing agreement.

Initially, it appears that the court's intent was to order strict specific performance from the State. But the State moved to reconsider, requesting that it be allowed to argue against the sentencing agreement. During the subsequent hearing on the motion for reconsideration, the superior court asked the parties whether, despite being required to reoffer the original plea agreement, the State could nevertheless ask the court to reject the sentencing portion of the agreement.

In response to this question, the prosecutor asserted that the State could ask the superior court to reject the sentencing agreement, and the defense attorney agreed. The court then announced that it agreed with both parties that the State could

10  *Id.* at 1123.

11  *Id.* at 1123-24.

12  *Id.* at 1125.

13  *Id.*

ask the court to reject the parties' sentencing agreement. With this understanding, Ahvakana entered guilty pleas to the second-degree assault, first-degree burglary, and fourth-degree assault charges as required by the Rule 11 agreement.

At the sentencing hearing, the State asked the court to reject the sentencing agreement, arguing that it was too lenient and endangered public safety. By contrast, Ahvakana's attorney argued that the sentencing agreement was appropriate and that the court should adopt it. Ahvakana's attorney did not argue that the prosecutor had breached the terms of the plea agreement by asking the court to reject the sentencing agreement.

At the conclusion of the hearing, the court rejected the original sentencing agreement as too lenient. The court agreed with the author of the presentence report that isolation and community condemnation were the primary goals of sentencing, and the court found that there was "nothing to suggest that Mr. Ahvakana is going to be successful on probation." After reviewing Ahvakana's underlying conduct, which the court described as a "very serious assault," the court focused on Ahvakana's escalating criminal behavior, agreeing with the presentence report that Ahvakana's long-standing "criminal thinking and behavioral patterns" had "finally transgressed into a manipulative and controlling matured man who continues to place women in extreme fear by subduing them, to beating and threats, when they fail to gratify his expectations and demands." The court noted that Ahvakana had broadened his victims to include other men, police, and probation officers; that he had "shown remarkable consistency in his criminal activities"; and that he was "undeterred" from continuing to engage in those activities "despite the magnitude of rehabilitative opportunities offered to him by the courts, by [Department of Health and Social Services], and the Alaska Parole Board and Probation, as well as the extensive jail time he has already served." Given this analysis, the court concluded that the original sentencing agreement of 17 years to serve was too lenient under the *Chaney* criteria.

Ahvakana was then given an opportunity to withdraw from the plea agreement, which he declined.[14] The parties proceeded to open sentencing.

At the final sentencing hearing, the court imposed 21 years to serve, the maximum sentence permitted by the charge agreement. The court also restricted Ahvakana's eligibility for discretionary parole for the duration of his sentence. In explaining its sentence, the court repeated many of its earlier remarks and found that Ahvakana was "a very dangerous person" with "a horrible criminal history." The court stated that "whether it's committing sexual crimes or committing violent crimes, he's someone that has just created a lot of havoc in his community." Based on his criminal history, the seriousness of the conduct in this case, and Ahvakana's failed attempts at rehabilitation, the court ultimately concluded that Ahvakana was "a very serious criminal defendant that the court need[ed] to treat very seriously" and the court further concluded that "the community can't be put at risk by allowing parole time."

Ahvakana now appeals.

### Why we conclude that the court had the discretion to allow the State to argue against the re-offered sentencing agreement

On appeal, Ahvakana argues that the State violated the original terms of the plea agreement when it asked the superior court to reject the agreed-upon sentence.

As a general matter, a plea agreement may consist of two parts: a charge agreement (*i.e.*, an agreement that the defendant will plead guilty to particular charges); and/or a sentencing agreement (*i.e.*, an agreement that the defendant will receive a

---

[14] *See Frankson v. State*, 518 P.3d 743, 753-54 (Alaska App. 2022) (explaining that a defendant may withdraw from a plea agreement if the court rejects the sentence agreement as too lenient); *see also* Alaska R. Crim. P. 11(e)(3).

particular sentence).[15] Although courts in Alaska have no authority to reject charge agreements, courts are not required to accept sentencing agreements.[16]

The State argues that it did not violate a term of the original plea agreement because the parties' written agreement stated only that Ahvakana would "receive" a certain sentence; it did not provide that the prosecutor would recommend the proposed sentence or would refrain from arguing against it. The State therefore contends that the prosecutor did not breach the original plea agreement when it asked the superior court to reject the agreed-upon sentence.

But, as we noted above, courts are required to accept charge agreements, but they are not required to accept sentencing agreements. This means that when the State offers a sentence as part of a plea agreement, it has no power to guarantee the defendant will actually "receive" that sentence. Thus, when an agreement provides that a defendant will *receive* a particular sentence, it must be interpreted to mean that an implicit term of the agreement is that the parties will *ask* the court to impose that sentence, or, at the very least, that neither party will actively petition the court to impose a different sentence. The State's alternative interpretation would make sentencing agreements almost meaningless, as both parties would be permitted to ask the court for a sentence different than the one they ostensibly agreed to.

Accordingly, we conclude that had the superior court's intent been to require both parties to comply with the original plea agreement, then it would have been error for the court to allow the State to argue against the sentencing agreement.

But, at the State's request (and with Ahvakana's acquiescence), the superior court modified the terms of the original plea agreement to allow the prosecutor to argue against the original sentencing agreement. Therefore, the question before us is

---

[15] *Frankson*, 518 P.3d at 753.

[16] *Id.*; *Ghosh v. State*, 400 P.3d 147, 154 (Alaska App. 2017); *see also* Alaska R. Crim. P. 11(e).

whether the court had the discretion to modify the agreement in this manner. Given the unique circumstances of this case, we conclude that it did.

The circumstances of this case are unique because Ahvakana initially *rejected* the original plea agreement and went to trial. As a result of Ahvakana's rejection of the plea agreement, the State was deprived of the primary benefit of the original plea agreement and was forced to expend the resources required to prosecute Ahvakana through trial. Indeed, the State was deprived of some of the benefits of the original plea agreement even before Ahvakana went to trial: the original plea agreement was predicated on the requirement that Ahvakana neither seek bail nor file any pretrial motions, but Ahvakana did both things after rejecting the plea agreement.

The original plea agreement was nevertheless made available to Ahvakana for a second time as a remedy under *Lafler v. Cooper* for his attorney's ineffective assistance of counsel.[17] As we explained in our most recent decision in this case, the remedy for ineffective assistance of counsel under *Lafler v. Cooper* "must 'neutralize the taint' of a constitutional violation, while at the same time not grant a windfall to the defendant or needlessly squander the considerable resources the State properly invested in the criminal prosecution."[18] We conclude that, here, the court acted within its discretion when it required the State to reoffer the original plea agreement but allowed the prosecutor to argue against the sentencing agreement. That is, we conclude that the superior court could reasonably conclude that such an approach — which was not objected to by Ahvakana's attorney — represented a fair balance between placing Ahvakana back in the situation he would have been but for his attorney's ineffectiveness while still acknowledging the reality that circumstances had changed since the original plea offer was made. Accordingly, we find no plain error in the superior court's decision

---

[17] *See Lafler v. Cooper*, 566 U.S. 156, 170-72 (2012).

[18] *Ahvakana*, 475 P.3d at 1125 (quoting *Lafler*, 566 U.S. at 170).

to allow the prosecutor to argue against the original sentencing agreement as part of a modified *Lafler* remedy. [19]

*Why we conclude that the sentence Ahvakana received is not excessive*

Ahvakana also argues (in a conclusory fashion) that the superior court erred in rejecting the original plea agreement and he asserts (again, in a conclusory fashion) that his sentence is excessive. We find no merit to these claims.

When we review an excessive sentence claim, we independently examine the record to determine whether the sentence is clearly mistaken.[20] The "clearly mistaken" standard contemplates that different "reasonable judges, confronted with identical facts, can and will differ on what constitutes an appropriate sentence," and that a reviewing court will not modify a sentence that falls within a permissible range of reasonable sentences.[21] We have independently reviewed the sentencing record in this case and we do not find the sentence imposed here clearly mistaken. The superior court's findings regarding Ahvakana's dangerousness are well-supported by the record, as is its decision to restrict Ahvakana's parole eligibility.

---

[19] We note further that even if we were to conclude that the court *did* order strict specific performance and that the State therefore breached the original plea agreement by arguing against the original sentence agreement, the remedy would not automatically be a new sentencing hearing. Ahvakana cites to *Santobello v. New York*, 404 U.S. 257 (1971), for the proposition that when the government breaches a plea agreement, a defendant is entitled to relief regardless of whether the court was actually influenced by the breach. *See id.* at 262-63. But the defendant in *Santobello* objected to the government's breach at the time it occurred. *Id.* at 259. As the United States Supreme Court later clarified in *Puckett v. United States*, 556 U.S. 129, 135 (2009), when the defendant does not make a contemporaneous objection to a breach, and instead raises the issue for the first time on appeal, the defendant is required to show plain error, including prejudice.

[20] *McClain v. State*, 519 P.2d 811, 813-14 (Alaska 1974).

[21] *Erickson v. State*, 950 P.2d 580, 586 (Alaska App. 1997).

*Conclusion*

The judgment of the superior court is AFFIRMED.